W. H. MILLIKIN v. L. A. LOCKWOOD.

No. 16,128.

SYLLABUS BY THE COURT.

1. TITLE AND OWNERSHIP—*Merger.* Where a tax title and the patent title are united in the same person, an outstanding lease previously made by the holder of the tax title, while in possession under a tax deed valid upon its face and of record more than five years, is not merged if the interest of the lease-holder had become vested before such titles were united.

2. ———— *Assignment of a Lease—Attornment by Assignee—Liability to Assignor.* The assignee of a lease in the situation stated above is not bound to yield to the demands of the grantee of the titles so united, and if he does so voluntarily, and accepts another lease from such grantee, he is not thereby relieved from paying the rents and performing the conditions stipulated in the assignment.

3. TAX DEEDS—*Limitation of Actions—Rights of Lessee.* In the situation stated such lessee might have availed himself of the protection afforded by section 141 of the tax law (Gen. Stat. 1901, § 7680) in defense of the claims made upon him by such grantee.

4. RENTS AND PROFITS—*Liability of Assignee of a Lease—Attornment.* The voluntary relinquishment by an assignee of a lease to claims asserted under a title inferior to that of the lessor, whose better title has not been extinguished, will not avail against a claim for rent.

Error from Chautauqua district court; GRANVILLE P. AIKMAN, judge. Opinion filed July 3, 1909. Affirmed.

## STATEMENT.

IN February, 1903, Melissa Thompson was in possession of lots 5 and 6, containing about 57 acres, under a tax deed, and was the owner in fee of lots 7 and 8 adjoining. At that time she made an oil-and-gas lease to L. A. Lockwood on the four lots, in consideration of one-tenth of the oil produced upon the property, to be delivered to her, and certain other rentals. On May 26, 1903, Lockwood assigned this lease to Millikin, in consideration of $900 and an agreement that he should receive 6⅔ per cent. of the oil produced. The fee title to lots 5 and 6 and lot 10, the latter being a separate tract, was in C. W. Lane and Marie Castle. These three lots were sold in 1894 for the taxes of 1893, and bid in by the county treasurer. On November 9, 1897, the tax certificate on lots 5 and 6 was assigned to Mrs. Thompson for two-thirds of the taxes due on the three lots, and on the same day a tax deed was issued to her and recorded.

In the summer of 1903 Millikin went into possession of the leased property and commenced the erection of a derrick on lots 5 and 6, but, learning that Mrs. Thompson's title was based upon a tax deed, stopped work. Mrs. Castle died in 1899. Her children, who were minors, paid $82.66 to the county treasurer in 1903 to redeem lots 5 and 6 from the tax sale. On January 12, 1904, Mrs. Thompson conveyed the lots to G. W. Goss, and the treasurer paid this redemption money over to him. On February 25, 1904, the Lane and Castle heirs began an action in ejectment against Thompson, Goss and Millikin to recover lots 5 and 6, and enjoined Millikin from proceeding under the lease. Before commencing that action a notice of the claims of the plaintiffs therein was served on Millikin, who thereupon employed D. E. Rathbun, an attorney, to examine the title. While the action was pending he employed Mr. Rathbun to look after his interests. Rathbun procured an

extension of time to answer, but no answers were filed by any of the defendants in that action. On March 10, 1904, Goss executed a quitclaim deed to the Castle heirs, and on March 30 Lane and the Castle heirs by warranty deed conveyed these lots to Rathbun, subject to tax liens and tax deeds. The ejectment action was then dismissed.

Rathbun notified Lockwood and Millikin of his title and warned them to remove from the premises any property they had thereon, and took actual possession of the lots himself. The unfinished derrick constructed by Millikin and a boiler left by him were still upon the premises. Thereupon Millikin executed and delivered to Rathbun an instrument declaring that he claimed no interest under the lease from Mrs. Thompson, recognized Rathbun's title, and took from him an oil-and-gas lease, dated April 5, 1904, upon the same premises (lots 5 and 6), and proceeded to drill several wells thereon and to take and market oil therefrom. Millikin drilled a well on lot 8 just before obtaining the lease from Rathbun, but it was dry, and nothing further was done on that lot or on lot 7. He paid one year's rental on lots 5 and 6, as stipulated in the lease, and two years rental on lots 7 and 8.

It seems to be conceded that the tax deed, if subject to attack in this action, is invalid for the reason that separate tracts were assessed and sold as one and the assignment of the certificate was made upon a part of the property for a proportion of the amount due upon the whole. It also appears that the ancestors of the minors who paid the redemption money died after the tax sale had been made, so that their children had no right to redeem on the ground that they were minors. After Millikin had succeeded in finding oil upon the premises Lockwood demanded a division order, that he might obtain his share of the proceeds under the Thompson lease. Millikin refused, denied any liability to Lockwood, and informed him that he claimed under

the lease from Rathbun. Lockwood sued Millikin for his share under the assignment of the Thompson lease. There is no dispute as to the amount due, if liability be shown.

*D. E. Rathbun, T. F. Garver*, and *R. D. Garver*, for the plaintiff in error.

*W. H. Sproul*, and *Charles D. Shukers*, for the defendant in error.

The opinion of the court was delivered by

BENSON, J.: The tax deed to lots 5 and 6 had been of record more than five years when Mrs. Thompson, then in possession and claiming title under it, made the oil lease to Lockwood, which was assigned to Millikin and under which Millikin took and held possession—a possession which he afterward yielded to Rathbun. If Mrs. Thompson had conveyed the premises instead of leasing an interest in them her grantee would have succeeded to all her rights, and if Millikin had taken as grantee under a conveyance from Lockwood instead of taking as assignee of a lease he would have succeeded to the same rights. This is true with respect to the interest carved out of the estate and transferred by the lease, for the lessee and assignee respectively took the same rights in the interest so transferred that they would have taken in the whole estate had it been conveyed instead of the leasehold. It must be conceded, therefore, that if Millikin had refused to yield to Rathbun and had remained in possession he could have successfully claimed the protection of section 141 of the tax law (Gen. Stat. 1901, § 7680), the tax deed being valid upon its face and having been of record more than five years, unless it should be held that the tax title had been redeemed or otherwise made ineffectual.

It is claimed that the tax title was avoided by the acceptance by Goss of the money paid for redemp-

tion, although the minors had no right of redemption. It is true that Goss, grantee of the tax title under Mrs. Thompson, who held it when the lease was made, could not hold the title and the money too; and it may be conceded that by accepting the money he in effect relinquished his right to retain the title; but he could relinquish no greater interest than he owned. The lessee, Lockwood, received nothing and relinquished nothing, and his rights could not be destroyed by the lessor or the grantee of the lessor after the lease became effective and the rights of the lessee under it had become vested.

The tax title and the outstanding original title were united by the conveyance from Goss to the Castle heirs. If this should be treated as a merger of the tax title, which is probably not true, it still would be only a merger of whatever estate remained in Goss to be merged, and could not include the outstanding leasehold.. The merger, if any, would only be coextensive with the interest to be merged. (16 Cyc. 665; *Loan Association v. Insurance Co.*, 74 Kan. 272.)

The principal controversy in this action is whether Millikin, having taken a lease under the Thompson title immediately from Lockwood and being in possession under it, should be allowed to repudiate that relation, set up an adverse title under a lease from another party, and thereby defeat the action for rents. He claims that "although a tenant can not dispute the title of his landlord so long as it remains as it was at the time the tenancy commenced, yet he may show that the title under which he entered has expired, or has been extinguished." (*Weichselbaum v. Curlett*, 20 Kan. 709, syllabus.) The application of this principle fails because the title under which he originally entered had not been extinguished.

It is also contended that as the limitation contained in section 141 of the tax law is only available as a defense, the plaintiff, Lockwood, can have no benefit from

its operation, since he is now seeking affirmative relief. (*Walker v. Boh,* 32 Kan. 354.) On the other hand, it is urged that, as the tax deed would have been a sufficient defense for Mrs. Thompson in an action of ejectment against her while she was in possession under it, the same defense was available to Millikin had he seen fit to resist Rathbun's. claim, and so the right of Lockwood to collect his rents remained unimpaired. It was said in *Nicholson v. Hale,* 73 Kan. 599, construing section 141 of the tax law:

"An exception to the rule that a statute of limitations can only be used as a shield of defense and not as a weapon of attack is recognized where the person claiming under the statute has been wrongfully dispossessed after the prescribed period has run." (Page 602.)

It was held in that case that a party holding under a tax deed valid upon its face and of record for five years, when dispossessed by force, fraud or stealth, does not, in maintaining ejectment, enlarge the scope of his original claim, but only regains what was wrongfully taken from him. The plaintiff here seeks no enlargement of his interest in the lease; he only seeks to recover rents which are due unless his right has been lost by the settlement between Rathbun and Millikin and the interposition of a superior title. When the action by the holders of the original title was commenced, Millikin promised Lockwood that he would attend to it and have it "fixed up"; that if Lockwood would "be patient . . . he [Millikin] would get that fixed up and drill the premises." Lockwood was not a party to the action, but Millikin was, and did not request Lockwood to defend it. The manner in which it was fixed up, or adjusted, was that Rathbun, who was Millikin's attorney in that action, procured conveyances from the hostile claimants to himself and then set up an adverse title, to which Millikin at once surrendered; then Millikin took a lease from Rathbun and proceeded vigorously with work upon the same

premises. No notice of this important adjustment. was given to Lockwood until the latter, finding that oil was being marketed from the premises, asked for his. share under the Thompson lease, when his claim was. rejected and he was informed of the lease from Rathbun. It is true that some of the facts stated in this. paragraph were denied by the defendant, but, having been testified to, they must be accepted as true under the general finding for the plaintiff. The defendant,. being in possession under an apparently valid tax deed, yielded to an inferior title. This voluntary relinquishment of his rights under the lease is not a valid reason for refusing to pay rent or perform the conditions of the assignment. (1 Taylor, Landlord & Tenant, 9th ed., § 373.)

The only errors assigned are that plaintiff was not entitled to judgment upon the evidence, and the holding that the tax deed was not open to attack. For the reasons stated we hold that the evidence supports the judgment, and that the effect given to the tax deed was. proper.

The judgment is affirmed.