Buehler v. Teetor.

---

M. H. Buehler, *Appellant*, v. Joseph L. Teetor *et al.* (John F. Masch *et ux., Appellees*).

No. 16,893.

SYLLABUS BY THE COURT.

1. STATUTE OF LIMITATIONS — *Affirmative Relief — Tax-title Holder Wrongfully Dispossessed.* When one, without claim of title, occupies and uses land theretofore vacant and unoccupied, as the property of the holder of a tax title thereon, with the knowledge and consent of such tax-title holder, and in subordination to his title, and the tax deed is valid upon its face and has been of record for more than five years, the holder of the tax title is held to be in actual possession, and may maintain an action of ejectment against a party who wrongfully dispossesses him.

2. ———— *Tax Deed Valid on its Face.* In the circumstances stated in the foregoing paragraph a party who has so dispossessed the owner of the tax title, although holding under the original patent title, can not avail himself of infirmities in the tax deed, not appearing upon its face, to defend an action of ejectment brought by the holder of the tax title.

Appeal from Scott district court. Opinion filed March 11, 1911. Reversed.

## STATEMENT.

TWO causes of action are stated in the petition: One for foreclosure of a mortgage, and one for possession of the land, based upon the alleged rights of the plaintiff as a mortgagee, and also as grantee in a tax deed, claiming that he had previously taken and held possession and been wrongfully dispossessed by defendants John F. Masch and wife. Joseph L. Teetor and wife, mortgagors, were joined as defendants, but service was not made upon them.

The answer contained a general denial, an admission of possession, and a specific denial that the plaintiff had ever taken or held possession. Findings of fact were made and judgment was rendered for the defendants. The plaintiff appeals.

*Gleed, Hunt, Palmer & Gleed,* for the appellant.

*W. H. Russell,* and *Frank U. Russell,* for the appellees.

The opinion of the court was delivered by

BENSON, J.: The indebtedness to the plaintiff secured by the mortgage became due in April, 1892. In May of that year the mortgagor made the last payment, and abandoned the land in that year. The land thereafter remained vacant and unoccupied until the year 1897, when one Wallace, without right or claim of title, entered into its possession. He inclosed it with other land, sank a well and erected a windmill upon it, and used it for grazing purposes and as a watering place for stock.

The plaintiff is a nonresident of Kansas, residing in Pennsylvania at the time he took the mortgage, and ever since. After payments upon the mortgage ceased he obtained an assignment of a tax-sale certificate upon the land, and thereupon a tax deed in regular form was issued to him, for the delinquent taxes of

1892 and 1893, dated September 14, 1896.   Afterward, and at the proper dates, he paid the taxes for the years 1894 to 1906, inclusive.   He knew that the land was used for grazing purposes by people in the vicinity, after its abandonment by the mortgagor, to which he made no objection, and he made no objection to the use and improvements made by Mr. Wallace after learning the facts.

At sometime before February 23, 1906, defendant John F. Masch wrote to the plaintiff in regard to this land, and on that date wrote another letter to him, saying that, if a deal referred to should go through, "I can give you $800 for your land, for perfect title." On March 5, 1906, Masch again wrote to the plaintiff as follows:

"*Mr. M. H. Buehler, Pittsburg, Pa.:*
    "Dear Sir:   Your favor of 3-2 at hand.   In reply I will say that I can not raise my offer of February 23 on your land—S. W. 4 27-19-33 Scott Co., Kan.
    "If above land has cost you $1600 my advice would be to hold land and see if this country develops so you will get your money back, what you have invested in your land. . . .   In case you desire information what we are doing you can write me and I will give you all information I can."

In March, 1907, defendant John F. Masch procured a quitclaim deed to the land from the mortgagors, who were the owners at the time the mortgage was made. He then told Wallace that he had bought the land, and took immediate possession.   Wallace made no objection, and removed his property from the land.   It appears that Wallace knew of the plaintiff's claim to the land, and testified that he used it as the land of the plaintiff, but paid no rent.

It is contended by the plaintiff that the appellees are not protected from foreclosure by the bar of the statute of limitations, because of the intervening tax title, which, being good upon its face, could not be set aside for irregularities, it having been of record more

than five years. The precise claim appears to be that the tax title, being perfect, superseded the original title, therefore Masch took nothing by his deed from Teetor, and the statutory bar is not available as a defense against the mortgage. On the other hand, the appellees contend that the tax deed is unavailing for affirmative relief because actual possession was never taken under it, and that for the same reason the plaintiff can have no rights as a mortgagee in possession.

In the view taken by this court it is not necessary to determine the effect of the statute of limitations upon the claim for foreclosure. If the plaintiff is in a situation to avail himself of the tax title to obtain possession, he should recover independent of any right he may have as a mortgagee. Among the findings of fact were the following:

"That plaintiff did not take actual possession of the land in question, if at all, either in person or by tenant, until about June, 1906.

"That about June, 1906, plaintiff discovered that Wallace was in possession of the land as hereinbefore found, and that thereafter Wallace remained in possession with the knowledge and consent of plaintiff until about April, 1907, when he surrendered possession to defendant J. F. Masch."

As the plaintiff's tax deed was issued in September, 1896, and Wallace entered into the occupation of the premises in the following year, there was a period when it was not actually occupied by anyone, but, being vacant, was in the constructive possession of the holder of the tax deed.

"A tax deed of vacant land, good upon its face, and duly recorded, invests the tax-title holder with constructive possession of the land; and such constructive possession, when uninterrupted by the actual possession of the adverse claimant, perfects the tax deed at the expiration of the statutory period as against affirmative assaults upon it for defects in the proceedings upon which it is based." (*Stump v. Burnett*, 67 Kan. 589, 594.)

Constructive possession, however, is not sufficient to afford grounds for affirmative relief to the holder of a tax deed. (*Stump v. Burnett,* supra, syl. ¶ 1.)

Following this constructive possession of the plaintiff was the actual occupation by Wallace, but this was not in hostility to the tax title. He held in subordination to the plaintiff's rights, without any claim of title or interest in himself. The plaintiff, when he became aware of Wallace's occupation and use, consented thereto; and Wallace continued to use the land as the property of the plaintiff. The minds of the plaintiff and of Wallace were in accord, the plaintiff claiming the title but consenting to the occupation by Wallace, who used the premises with knowledge of, and acquiescence in, the plaintiff's claim of title. This possession of Wallace was not adverse, but on the contrary was, in legal effect, the possession of the plaintiff.

"Whenever such a relation, or trust, or privity of estate exists between the actual occupant of the land and another that, in respect to the possession, there is between them an identity or subordination of interests, then the possession of one—the occupant—becomes, as in the case of cotenancy, the possession of the other, through the principle of agency or trust." (Sedg. & Wait, Trial Tit. to Land, 2d ed., p. 603.)

Occupancy by one in subordination to the title of another, with that other's assent, express or implied, creates a tenancy. (1 Wood, Land. & Ten., 2d ed., § 1.) It must be held, therefore, that the plaintiff, having before that time been in constructive possession of the land, was in actual possession from June, 1906, until April, 1907, when he was dispossessed by the appellees. The plaintiff's possession was rightful; the tax deed under which he claimed was valid upon its face, and had been of record for more than five years. If the appellees had sued for possession they would have been met by the defense that such a deed is unassailable, the taxes not having been paid or the

land redeemed. (Laws 1876, ch. 34, § 141, Gen. Stat. 1909, § 9483.)

It remains to be considered whether the possession, obtained as it was, gave the appellees a right to assail the deed for latent defects. The appellees knew that the plaintiff claimed to own the land, and in writing to him Mr. Masch referred to it as "your land," and offered to buy it. Not satisfied with the price, he advised the plaintiff to hold it, and then bought in an outstanding adverse title, which would have been defeated by the tax deed if possession under it had not been disturbed. It was said in *Nicholson v. Hale,* 73 Kan. 599 (followed in *Millikin v. Lockwood,* 80 Kan. 600) :

"An exception to the rule that a statute of limitations can only be used as a shield of defense and not as a weapon of attack is recognized where the person claiming under the statute has been wrongfully dispossessed after the prescribed period has run." (p. 602.)

Again, it was said in the same opinion:

"We think that when a tax deed, valid on its face, has been of record for five years, and the tax-title holder is in possession, claiming by virtue of the tax deed, and one claiming adversely wrongfully dispossesses him by force, fraud, or stealth, the holder of the tax title may maintain ejectment to regain what was wrongfully taken from him. . . . To hold otherwise would encourage reprisals and scrambling for possession, which the law discountenances." (p. 603.)

Holding the possession, as Wallace did, from June, 1906, if not before, in subordination to the title of the plaintiff, and with his assent, Wallace had no right to surrender it to the appellees, and by yielding he conferred no right upon them. Possession so obtained by the appellees was wrongful, and falls within the principles declared in *Nicholson v. Hale,* supra; and the plaintiff could therefore maintain ejectment. (See, also, *Stouffer v. Harlan,* post.)

Van Vrankin v. Railway Co.

The district court concluded as matter of law "that plaintiff did not have such possession of the land in question under his tax deed as to enable him to use it as a basis for this action without exposing it to attack for its inherent defects." Following ·this conclusion, the court held the deed invalid because of infirmities shown by extrinsic evidence, but not appearing upon its face. The conclusion was erroneous, and the judgment can not be upheld. It is therefore reversed and the cause remanded, with directions to render judgment for the plaintiff for possession.