GEORGE W. BAKER *et ux.*, *Appellants*, V. WILLIAM READICKER *et al.*, *as Partners, etc., et al., Appellees*.

No. 16,950.

SYLLABUS BY THE COURT.

1. RECORD—*Duty of Appellant to Have Stenographer's Notes Transcribed, Certified, and Filed.* While section 574 of the code does not expressly require that the party appealing to the supreme court, in a case tried in a court of record, shall direct the stenographer to transcribe and certify to the correctness of all of the stenographer's notes of the testimony and proceedings in the case and thus make such transcript, when filed in the court, a part of the record, it is the only

provision made for a record of the evidence in the case on appeal. Other provisions of the code assume the existence of such a record. It is, therefore, held to be the duty of the appellant to procure such transcript, or so much thereof as may be pertinent to his appeal, and have it made a part of the record before filing his abstract in this court.

2. CONTRACTS—*Acceptance of Offer to Lease—Retention of Paper Tendered.* Where two parties are negotiating for a lease of land by one to the other, and the lessee prepares a lease which the lessor declines, but the lessor prepares and signs another lease with some different provisions and stipulations and sends it by a third person to the lessee, who immediately refuses to execute it, but retains the paper and insists that the lease shall be as he prepared it, if at all, *held*, that the retention of such paper does not constitute a completion of the contract of lease on the terms therein specified.

Appeal from Allen district court. Opinion filed April 8, 1911. Affirmed.

*R. H. Bennett,* and *R. E. Cullison,* for the appellants.

*H. A. Ewing, S. A. Gard,* and *G. R. Gard,* for the appellees.

The opinion of the court was delivered by

SMITH, J.: The proceedings of the plaintiff in bringing this case to this court are very irregular, and the defendant contends that the appeal should be dismissed. Section 569 of the code, however, provides that when a notice of appeal is filed and served as therein provided the appeal shall be deemed perfected. Section 574 of the code is as follows:

"Either party to any case tried in a court of record having an official stenographer may direct such stenographer to transcribe and certify to the correctness of all of the stenographer's notes of the testimony and proceedings in the case or any such part as such party may designate, and such transcript shall be made, certified and filed with the clerk of such court on payment to such stenographer by the party ordering the same of the costs of such transcript, and such transcript

shall thereupon become a part of the record in the cause, subject to amendment and correction by the trial court or judge."

Section 576 of the code provides for an abstract of pleadings, records, etc., on appeal, and has this provision :

"In case of a challenge of the correctness of any part of an abstract, the court or any justice thereof may direct that all or any designated part of the original files, transcript of evidence, or other papers in the case, or copies of journal entries, or of other records of the said court, be forwarded by the clerk having the custody thereof to the clerk of the supreme court, and the costs incident to the determination of any question as to the correctness of any abstract shall be taxed against the party in the wrong by order of the supreme court."

Section 574 does not expressly require that a party taking an appeal from a court of record to this court shall procure a transcript of the stenographer's notes of the testimony to be certified and filed with the clerk of the court, but it seems to be the clear implication that the appellant should, at least, cause so much of the stenographer's notes of the evidence and proceedings to be transcribed, certified and filed as may be pertinent to his appeal; otherwise, as there is no other provision for making it, there can be no such record in existence, and an order from this court or any judge thereof to certify up a transcript of the evidence would be futile. In this case it appears from the agreed statement of facts and admissions on the argument that no transcript of the evidence and proceedings in the district court were filed with the clerk thereof, and that there is technically no record of such proceedings. It appears, however, that the appellant procured another stenographer to transcribe the evidence, and each party has filed an abstract based thereon. While the proceedings are irregular we will not dismiss the case.

In May, 1904, the appellants were the owners of 394

acres of land in Allen county, on which they executed a lease to the Sunflower & Shamrock Oil and Gas Company, a corporation, by which it was authorized "to lay, maintain and remove such pipes and pipe lines, and to erect, construct, maintain and remove all buildings, tanks, structures and machinery that may be necessary for the production and transportation of oil and gas and other minerals or water." The corporation proceeded to bore several wells upon the property, in which it found some gas and some oil. The company became indebted to a number of individuals, to whom it gave notes, and the notes came into the hands of one E. G. Drake, who brought suit against the company and recovered a judgment, in January, 1907, for $4,203.98, with interest and costs. Soon thereafter Drake caused execution to be issued on the judgment and levied upon the oil-and-gas lease, the pipes, pipe line, casing, engines, boilers, shafting, pulleys, derrick, power house and all other fixtures and machinery of the company located on the land. All of the property levied on was sold at sheriff's sale to Drake for $1325. While the judgment was obtained by Drake, the money seems to have been advanced, in part, by Ewing and Hepperlen and others interested in the corporation, but principally by the three named. Appellant G. W. Baker was president of the company, and appellee William Readicker was a director of the company.

Sometime after the sale of the property Baker went to Nebraska, where the others named resided, except Readicker, who lived in Kansas, and made a tentative agreement to form a partnership with Drake, Ewing and Hepperlen, and a tentative agreement for a new lease from himself and wife to the copartnership. After Baker's return to Kansas the Nebraska members of the contemplated partnership forwarded to him a proposed lease for him to execute. Instead of executing it he inserted some additional provisions and conditions and returned it to Nebraska for the considera-

tion of the others. This proposed lease came into the hands of Drake, who refused to sign it, but has ever since retained it.

After his return from Nebraska, Baker took charge of the property and gathered up and took care of the piping, wells, etc., and continued to do so until the appellees appeared with a bill of sale of all of the property sold at the sheriff's sale, executed by Drake to them. They took charge of the property and commenced to withdraw the casing from the wells, when Baker and wife brought this action and procured a temporary injunction to prevent the further progress of that work. Among other things, it was alleged in the petition that the wells from which the casing had been removed were not properly plugged, and that great injury would result by reason thereof to the oil- and gas-bearing sands of the entire district. On the trial of the case the court rendered judgment against the plaintiffs and for the defendants, dividing the costs, and vacated the temporary injunction, but decided that the wells had not been properly plugged in accordance with the laws of the state, and that, before dismantling any other wells, the defendants should comply with such laws.

The principal questions involved in this appeal seem to be whether a partnership was formed and a lease from the Bakers to the Nebraska parties was made, as contended for by the appellants. The evidence is conflicting as to the making of the contract of partnership, one party asserting that it was in writing and the other that it was verbal, and both parties seem to imply that the organizing of the partnership was contingent upon the making of the lease. The appellants contend that as they made and signed a lease on their part and forwarded it to Drake, who retained it, it constituted an acceptance and that the lease became operative.

We think the court was justified in finding that the retention by Drake of the proposed lease, sent by

Baker to him, through Ewing, did not constitute an acceptance of the lease. Baker testified that Ewing was elected secretary of the proposed partnership and authorized to correspond with him, that he was to write the other members of the partnership, and, in short, to carry on any negotiations through Ewing. Drake, however, denied all this, denied that Ewing was made secretary or that any such proposition was discussed. He said that he prepared a lease for Baker to sign, and that unless Baker signed that lease he (Drake) had nothing to act on, and he did not recognize anybody; that Baker did not sign that lease; that Ewing brought him another lease (the one appellants claim he accepted) and that he immediately declined to execute it; and that, while he declined to attach that copy to his deposition, he offered to permit a copy to be made, and it appears that a copy thereof was attached to his deposition. According to Baker's testimony, the authorities cited would probably apply, and the facts would constitute an acceptance of the lease by Drake; but according to Drake's testimony such would not be the case. It is for the trial court and not this court to weigh the evidence and pass upon the credibility of witnesses.

The appellants complain that, while the court found that the appellees in dismantling the wells were not complying with the laws of the state in the matter of plugging them, the temporary injunction should, at least, have been continued so as to prevent a further violation of the law. The judgment rendered by the court does, in effect, find that the appellees must comply with the law before proceeding to dismantle other wells, although the temporary injunction is dissolved. We think the court might well have continued the injunction to this extent, but it is a matter largely within the discretion of the trial court and we can not say that such discretion was abused.

The judgment is affirmed.