Davidson v. Timmons.

---

SAMUEL E. DAVIDSON, *Appellant*, V. ROBERT S. TIMMONS et al. (George H. Lantis, *Appellee*).

No. 17,915.

SYLLABUS BY THE COURT.

1. APPEAL—*Transcript—Matters Reviewable.* In order to secure a review of rulings of the trial court on the admission of evidence and other proceedings in the case it is necessary that the appellant shall procure a transcript of the evidence and proceedings upon which the rulings depend, and in the absence of such a transcript the supreme court can not settle conflicting claims as to proceedings in the trial court nor determine whether a ruling on the admission of testimony referred to in the findings of that court may not have been controlled by evidence, admissions or waivers not preserved in the record.

2. ACTION — *Quieting Title — Tax Lien — Affirmative Relief.* Where a party brings an action to quiet his title to land as against a claim of an interest in the land by defendant and asks to have such claim adjudicated, and the defendant answers

setting up a tax lien on the land and asks the court to protect his right to such lien, the court is warranted in not only adjudicating the right of the defendant to the tax lien but also in granting affirmative relief to him by providing for the enforcement of the tax lien found to exist.

.3. MORTGAGE FORECLOSURE—*Judgment Void—Tax Lien Adjusted.* D., who owned a tract of land and had given a mortgage on it, made default, when proceedings to foreclose the mortgage were had which resulted in a sale and deed to L. but which were subsequently determined to be absolutely void. L. paid the taxes on the land and obtained a tax deed, under which he took possession of the land, and continued to pay the taxes thereon for a number of years until it was judicially determined that the foreclosure proceedings, including the sheriff's sale and deed, were absolutely void, and also that his tax deed was invalid, whereupon he was ousted from possession of the land. L. brought an action claiming a lien for the taxes paid by him, which was dismissed without prejudice about the time the present action was brought by D. to quiet his title to the land. *Held*, under the facts found by the trial court in the action to quiet title, that L. is entitled to a tax lien on the land, that his right thereto had not been adjudicated in the prior action, and that he was not barred or precluded from obtaining relief and the enforcement of his tax lien in this proceeding by reason of lapse of time or his claim of ownership under the void deeds, and, further, that twelve per cent was the proper rate of interest on the tax lien awarded to L.

Appeal from Kingman district court. Opinion filed January 11, 1913. Affirmed.

*J. G. Campbell,* and *Ray Campbell,* both of Wichita, for the appellant.

*George L. Hay,* of Kingman, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to quiet the title of real estate which was homesteaded by the appellant, Samuel E. Davidson, in 1877. It appears that in 1879 he gave two mortgages thereon, one to secure a loan for $412 and another for $150, each bearing interest at twelve per cent per annum. In 1879 default

was made and the mortgages were foreclosed, and later, in 1881, the decree of foreclosure was modified. In 1881 Davidson was adjudged insane and taken to the hospital for the insane, where he remained about thirteen years. In 1882 the land was sold under the judgment of foreclosure to Kos Harris, who shortly afterwards assigned his interest in the land to Geo. H. Lantis. In 1880 the land was sold for the taxes of 1879, and the tax-sale certificate was assigned to Harris on May 20, 1882, and was at once reassigned by him to Lantis, who paid the taxes on the land for the subsequent years of 1880, 1881 and 1882 and in 1883 a tax deed was issued to him. Upon the issuance of the tax deed Lantis went into possession of the land and remained in possession of it until June 3, 1903, when he was dispossessed by a special mandate issued by the supreme court. In 1894 Davidson began an action to set aside the decree of foreclosure and all of the subsequent proceedings in the foreclosure case, including the sale of the land and the sheriff's deed, and on June 13, 1896, a judgment to that effect was rendered. In the trial of that case it was found that the proceedings were absolutely null and void and hence were ineffectual to convey the title of the real estate from Davidson to Lantis. It was therefore adjudged that all of the steps in the foreclosure proceedings should be vacated and that Davidson should be put into the full and undisputed possession of the land. In that controversy no finding or adjudication was made with reference to the validity of the tax deeds nor with reference to the right of subrogation under the mortgages. Error was prosecuted from that judgment to the supreme court, where the judgment was affirmed. (*Lantis v. Davidson,* 60 Kan. 389, 56 Pac. 745.)

In 1901 the appellee, Lantis, brought an action in which he claimed a lien against the land for the taxes paid and also asked to be subrogated to the rights of the mortgagees in the foreclosure proceedings which had

been set aside as invalid. This case was subsequently dismissed without prejudice for want of prosecution. While the last-named action was pending Davidson obtained a special mandate from the supreme court, upon an *ex parte* application, summarily ordering that he be put in immediate possession of the land. The court was not advised of the pendency of the proceedings, nor was it brought to its attention that Lantis had asked the trial court to determine the tax and other liens before surrendering possession of the land. Under that decree Davidson was put into possession. During all the time between April 8, 1899, and June 3, 1903, the land was involved in litigation between Davidson and Lantis in which Davidson was seeking for possession of the land and the recovery of rents and profits thereon, while Lantis had brought a number of injunction suits. On April 10, 1910, seven years after Davidson had gained possession of the land, he brought this action against Lantis and others to quiet his title to the land in controversy. Lantis pleaded that he had an interest in the land by virtue of a tax deed, and that he had paid taxes for a number of years which entitled him to a lien thereon. He also asked to be subrogated to the rights of the mortgagees in the foreclosure proceedings. In his reply Davidson claimed that Lantis was not entitled to any lien for taxes nor to the rights of subrogation, and he further pleaded that these questions had been adjudicated in another action and were not open to further inquiry. Upon a trial of the action in July, 1911, judgment was rendered quieting Davidson's title to the land, subject, however, to a tax lien in favor of Lantis in the sum of $1366.64, and which denied any relief to Lantis under his claim for subrogation to the mortgages illegally foreclosed. Davidson complains of that part of the judgment which makes the land subject to a tax lien, while Lantis, in a cross-appeal, complains that the court erred in the computation of the taxes,

Davidson v. Timmons.

and he insists that he was entitled to a lien of $2016.02, and also that he should have been subrogated to the rights of the mortgagees and awarded a lien for $3667.50.

Several errors are assigned by Davidson upon rulings admitting testimony and upon other proceedings had during the trial, but these are not available for the reason that no transcript of the evidence or proceedings has been procured or made a part of the record by appellant. Nothing is before us except pleadings, findings and judgment. Some statements as to the steps taken in the trial are made in Davidson's abstract and brief, but these can not be considered for the reason that Lantis has had no opportunity to test the correctness of the statements nor to make a counter abstract showing what actually occurred during the trial. In the absence of a transcript this court can not settle conflicting claims as to the proceedings in the trial court nor determine whether rulings referred to in the findings of that court on such proceedings may not have been controlled by evidence, admissions or waivers not preserved in the record. (Civ. Code, § 574; *Baker v. Readicker,* 84 Kan. 489, 115 Pac. 112; *Typewriter Co. v. Andreson,* 85 Kan. 867, 118 Pac. 879.)

The special findings which are in the record disclose that a part of the files of the case brought by Lantis a number of years ago to establish tax and mortgage liens against the land, and which was subsequently dismissed without prejudice, were admitted in evidence. Davidson insists that these were not within the issues, and besides, the files were not properly authenticated or identified. As the record is brought here, there is no way of determining whether the papers so introduced were properly identified or authenticated, or whether identification and authentication were not rendered unnecessary by the concession or waiver of the appellant. Testimony as to the acts and claims of

parties in the earlier litigation may have been pertinent and proper in order to ascertain the equities in the case and to show the extent of Lantis' possession, and whether the rights asserted herein were barred by any limitation.    At any rate we can not state, upon the record before us, that the evidence was improperly received, and if it were granted that it was not strictly within the issues it can not be decided that it was prejudicial to Davidson.

There is complaint, too, of certain rulings which excluded offered testimony, but these can not be reviewed, for the same reasons and the added one that it does not appear from the record that the excluded testimony was produced on the motion for a new trial as the code requires.    (Civ. Code, § 307; *Cooper v. Greenleaf,* 84 Kan. 499, 114 Pac. 1086; *Greer v. Mercantile Co.,* 86 Kan. 686, 121 Pac. 1121.)

Another claim is that the answer of Lantis did not warrant the court in giving him more than he asked, that is, affirmative relief by providing for the enforcement of the tax lien.    There is nothing substantial in this claim.    Davidson brought the action to have the title to his land quieted, and asked that Lantis be required to set forth the interest which he claimed in the land.    Lantis answered by pleading the payment of the taxes, the issuance of the tax deed, and other facts which tended to support his right to a tax lien as well as a mortgage lien by way of subrogation, and then he followed these allegations by asking that his rights under both claims be protected.    In his reply Davidson denied the right of appellee to a tax lien and also to any mortgage lien, and thus we see the question of the right of Lantis to a lien for taxes paid was properly raised.    There is very little difference between a prayer to have the rights of Lantis, because of the payment of taxes, protected and a specific request for the foreclosure and enforcement of his lien for taxes.    It is the fact stated in the pleadings rather than the

prayer which determines the nature and extent of the relief which shall be awarded to a party, and the trial court was clearly within the line of duty when it provided for closing up the contentions between the parties by determining the interests and rights of each and ordering the enforcement of the lien adjudged. This tax lien of appellee was sufficiently pleaded, and presumably it was sufficiently proved, and hence it was the duty of the court to provide for its enforcement. Further than that, appellant was not entitled to have his title quieted as against appellee until he had done equity by the payment of the taxes legally charged against the land and by discharging any existing liens held by Lantis. After inviting Lantis to set up his interest and to have it adjudicated, Davidson is hardly in a position to object to a judgment which determined that interest and which directed the enforcement of a lien found to exist.

The claim that the right of Lantis to assert a tax lien is barred can not be sustained, as no statute of limitations was pleaded by Davidson. Aside from that, the claim for a lien had been asserted in litigation which was pending between the parties from 1899, when *Lantis v. Davidson,* 60 Kan. 389, 56 Pac. 745, was decided, until about the time the present action was brought. The trial court found on facts, all of which are not preserved, that the right to a tax lien was not barred by any statute of limitations.

An objection is also made that rents and profits were not set off against the tax lien as equity requires. A finding of the trial court answers this objection, where it is stated that no such issue was raised in the case and no proof as to rents and profits was offered. (*Olson v. Peterson,* ante, p. 350, 128 Pac. 191.)

Again, it is contended that Lantis was not entitled to a tax lien, upon the theory that he was an owner when the taxes were paid. The foreclosure sale and deed were declared to be void, and hence Lantis was not an

owner by virtue of such sale and deed; neither can it be said that there was a merger, for although Lantis entered into possession under the tax deed it has been expressly found by the trial court that there was no merger of the interest he acquired under the tax deed and the claimed title under the sheriff's deed that was set aside. It appears that Lantis did not obtain a title to the land by either the foreclosure proceedings or the tax deed which turned out to be invalid. The contention that the tax deed was adjudicated in *Lantis v. Davidson,* supra, can not be upheld, as the court explicitly finds that Lantis' right to a tax lien was not determined in the judgment rendered in that case. Neither can it be held that his right to a lien was concluded by the special mandate which was issued from this court and under which Lantis was dispossessed of the land. It appears that that order was made on an *ex parte* application, and that the claim of Lantis for a lien for the taxes he had paid was not brought to the attention of the court, and neither was the court advised that Lantis had instituted an action, which was then pending, for the determination of his lien before surrendering possession of the land. The special mandate, therefore, did not operate as an adjudication of the tax lien, nor did it preclude Lantis from setting up the tax lien in this action.

Aside from the considerations mentioned, appellant has brought an equitable proceeding to quiet his title, in which he brings before the court the validity of the tax and other liens claimed by Lantis. As he is seeking equity it devolves upon him to do equity, and it is only equity that he should discharge the lien for the taxes legally charged against his land and which have been paid by the opposing party. (*Herzog v. Gregg,* 23 Kan. 726; *McKeen v. Haxtun,* 25 Kan. 698; *Richards v. Cole,* 31 Kan. 205, 1 Pac. 647; *Black v. Johnson,* 63 Kan. 47, 64 Pac. 988; *Wagner v. Underhill,* 71 Kan.

637, 81 Pac. 177; *Miller v. Ditlinger,* 81 Kan. 9, 105 Pac. 20; *Baldwin v. Gibson,* 85 Kan. 267, 116 Pac. 827.)

In his cross-appeal appellee complains that he was not allowed a higher rate of interest than twelve per cent on the taxes paid, but as ownership of the land was in litigation in several courts of the state from the time the tax deed was issued the rate of interest prescribed in section 282 of the law of taxation applies. It is there provided that:

"In case taxes are paid by any party whose lands are in controversy in any of the courts of this state, and the party so paying shall fail to recover said land, he shall be entitled to collect from the parties recovering the taxes so paid, with twelve per cent interest thereon; and the taxes so paid shall be a lien on any such land." (Gen. Stat. 1909, § 9495.)

It can not be held that the refusal of the court to grant appellee relief under the old mortgages, or to give him mortgage liens by way of subrogation, is error, as the testimony upon which the decision of the court rests is not in the record.

The judgment of the district court is affirmed.