## M. F. HUDSON v. M. E. GIBBONY, *Executrix*, &c.

1. MORTGAGE DEBT, *To be Paid Before Action.* Where A conveys to B certain real estate subject to a mortgage, in which conveyance A covenants to pay off the mortgage and remove the incumbrance, and at the time of the conveyance all the purchase-money is paid except the amount of said mortgage — before any action can be maintained by A against B to recover the unpaid purchase-money, A must either pay or cause to be paid such mortgage debt, and secure a release of the property from said incumbrance.

2. PURCHASE-MONEY, *Liability for, Accrues, When.* The same rule obtains although the mortgage was given to secure a debt of C; and if at the time of the maturity of the note, and even before the expiration of the three days of grace, neither C nor A pays or offers to pay the note, and C has no property out of which the debt can be made, B may, to prevent a foreclosure and the sacrifice of the property under judicial sale, substitute a new note and mortgage executed by himself as security for C's debt, and thus obtain for C further time for its payment; and if such note and mortgage be but for a reasonable time, B will still be under no liability to A for the unpaid purchase-money until the maturity of such new note and mortgage.

3. ———— *Equity.* In such transactions equity looks beyond the mere form and time, and regards the inherent rights of the parties; and if B's action is simply such as is necessary to protect himself and his property from sacrifice and loss, it will compel A to wait.

### *Error from Osborne District Court.*

AT the December Term, 1881, of the district court, *Margaret E. Gibbony,* as executrix of F. R. Gibbony, recovered a judgment against defendant *Hudson,* who brings the case here. The opinion contains a statement of the facts.

*Saxey & Barbour,* for plaintiff in error.

*Hays & Finn,* and *Walrond & Mitchell,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: The substantial question in this case arises upon these facts: Dr. Gibbony was the owner of some property in the city of Osborne, and on May 22, 1880, conveyed

the same to defendant, now plaintiff in error, by warranty deed. The property at that time was subject to a mortgage of $418, given to secure a note due September 1, 1880, and signed by Dr. Gibbony and one J. A. Wilson. In this note Wilson was the principal debtor, and Dr. Gibbony merely surety. The deed contained a covenant that the grantors were to pay this mortgage and get a release of said incumbrance. The consideration was $2,000, and all paid at the time of the conveyance except $418, the amount of the incumbrance. On the 1st of September, the note and mortgage not being paid, there was substituted for them a new note, signed by Wilson and Dr. Hudson, the defendant, and secured by a mortgage by Dr. Hudson on the property conveyed. By the execution of this new note and mortgage, further time was obtained for the payment of the debt. Thereafter, plaintiff, as the executrix of Dr. Gibbony, deceased, brought this action against Dr. Hudson to recover the amount of $418 and interest, claiming that by this arrangement both the estate of Dr. Gibbony and the property were released from the note and mortgage executed by Dr. Gibbony; that therefore the covenant in the deed had been performed, and the grantee, Dr. Hudson, was liable for the amount of such mortgage. That this new note and mortgage executed by Dr. Hudson were for the same debt as the former, and without any new consideration, is clear from the testimony. Wilson, who was the principal debtor, testified in reference to it: "I never got any money at Osborne county bank; I understand I made a change simply, and Dr. Hudson and wife secured the debt by giving their mortgage."

Substantially the same testimony was given by C. W. Crampton, Wilson's clerk and book-keeper, and also by Dr. Hudson. It is true in the latter's testimony he speaks of paying off the old note and mortgage and borrowing money from the bank therefor, but taking his whole testimony together, it is clear that the new note and mortgage were simply in exchange for the old note and mortgage, and as security for the same debt. Now under these circumstances, have the

grantors in that deed complied with their covenant in such a manner and to such an extent that they can recover from the grantee the amount of such mortgage? Technically, and tried by the letter of their covenant, it is possible they have. That particular note has been canceled, and the property released from the incumbrance of that mortgage; but looking beyond the form of the transaction and at the substantial equities of the parties, it is clear they have not. Dr. Hudson purchased this property burdened with this mortgage. The covenant of the grantors was that *they* should pay the mortgage and have the property released therefrom. Now a mere change of papers does not extinguish the debt, nor release the property. The papers are but evidences of the debt, and the debt remains, no matter what changes may be made in the mere evidences thereof. Dr. Hudson was entitled to that property upon the payment of $2,000. Now if Dr. Hudson is compelled to pay this judgment, he may thereafter be compelled to pay the mortgage given by him, and thus the property may cost him twenty-four hundred instead of two thousand dollars. If this debt were primarily the debt of Dr. Gibbony, there would be little doubt that the ruling of the district court was incorrect. But counsel argue that the debt was the debt of Wilson; that Dr. Gibbony was only security; and that when any change is made by the principal debtor, with the assent of the creditor, in the terms of the obligation, the security is equitably as well as legally discharged from further liability. This fact makes the question more difficult; and yet even with this fact we are constrained to think that the district court erred, and that upon the testimony as it stands the act of Dr. Hudson cannot be considered as a voluntary payment. The debt was due; it was an incumbrance upon the property; neither the principal debtor, Wilson, nor the security, Dr. Gibbony, paid or offered to pay it unless something was done. A foreclosure was imminent; and the property might be sacrificed to pay the debt and the costs of foreclosure. Under those circumstances we think Dr. Hudson was warranted in the steps he took to secure fur-

ther time. The new mortgage was given on the day that by its terms the old note became due; and the district court seemed to think that, because the parties did not wait until the three days of grace had expired, the transaction amounted on the part of Dr. Hudson to a voluntary payment. Upon this we remark, that the note is not copied in the record, and unless it were a negotiable note, there were no days of grace. But assuming it to have been a negotiable note, as from the instructions of the court it probably was, and still the note was due and payable on the 1st of September. Parties have a right to treat it as due and payable then, and the three days of grace are only limitations of the right to sue, so that in fact Dr. Hudson took no action until the note was due and payable. But further, even if Dr. Hudson did not wait until such time as an action could have been commenced on the note, still we think his action was not so premature as to make it a voluntary payment. The mere matter of time is not decisive. He was not compelled to wait until an action had in fact been commenced and costs incurred, or indeed until the very moment when an action could have been commenced, because then the payee might not have been willing to give time or Dr. Hudson able to obtain the money. A party with such an incumbrance on his property is not always master of the situation, and must do the best which the circumstances of the case will permit; and if Wilson were unable to pay the debt and no other means of discharging the incumbrance were apparent, Dr. Hudson was justified, after the note by its terms became due and payable, in securing further time by the execution of a new note and mortgage. But it may be said that by the execution of the new papers Dr. Gibbony ceased to be a security, and has no further voice as to the duration of the debt; that Wilson and Dr. Hudson can by repeated renewals indefinitely prolong the payment of the debt, and thus unnecessarily keep the Gibbony estate out of the money. This is not strictly true. If it should appear on the further trial that at the time of this transaction Wilson could have paid this debt or had property out of which the debt could

have been made, then the giving of this second note and mortgage must be considered a voluntary payment by Dr. Hudson; and action will now be maintainable; for only on the ground of necessity, and to save the property from sacrifice under judicial proceedings, could Dr. Hudson interfere. So, also, if on the maturity of the present note the plaintiff desires to take it up and to close the transaction with Dr. Hudson, all that the estate will have to do will be to give reasonable notice of such intention, and then if the parties a second time renew the mortgage lien it will be a voluntary transaction on their part which releases the estate from any legal or equitable obligation, and then this action will be maintainable.   In other words, and to close this opinion, equity always looks beyond the mere form of a transaction, the mere paper evidences, and goes to the substantial merits and equities.   In this case Dr. Hudson purchased this property burdened with a mortgage.   His obligation was to pay the amount of that mortgage when the property was released from its burden.   He was not called upon to incur costs, or make sacrifices, or to pay the amount of that mortgage twice. It was the duty of the grantor or the grantor's estate to protect him; if it failed to do that, to any extent that was reasonably necessary for his own protection Dr. Hudson had a right to act.   Whenever he goes beyond the necessity of his own protection, then the estate of Dr. Gibbony is released, and it may maintain its action against Dr. Hudson; but it must act; it must in some way assume the burden of this mortgage, or it must obtain the release of the property from such burden.   Until it does so, it has no right to ask from Dr. Hudson that amount.   This we consider the substantial and vital question in the case.   The district court seemed to place its ruling upon legal and technical grounds, rather than upon the substantial equities.   In this we think the court erred, and for this error the judgment must be reversed, and the case remanded for a new trial.

Whether the plaintiff's action is prematurely brought, or whether the estate must wait until further action on its part,

is a question which must be remanded for further considera-
tion. The judgment of the district court will be reversed,
and the case remanded for a new trial.

All the Justices concurring.