No. 28,919.

THE EL DORADO NATIONAL BANK, Plaintiff; M. L. AXTON, *Appellee,*
v. THE COCA-COLA BOTTLING COMPANY, of Wichita, *Appellant;*
THE COCA-COLA BOTTLING AND ICE CREAM COMPANY, of El Do-
rado, *Appellee.*

(282 Pac. 579.)

Opinion filed
December 7, 1929.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris*
and *George B. Powers,* all of Wichita, for the appellant.

*J. B. McKay,* of El Dorado, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is by a corporation
brought into the case on request of the original defendant and from
a judgment rendered against it upon a cross petition filed by the
original defendant based upon a written contract, the defenses
being that the contract was never performed by the party seeking
to enforce it, that the condition under which it was executed was
not performed and that it was *ultra vires.* The case was tried to

the court without a jury. Extended findings of fact were made and conclusions of law were stated.

The corporation brought in as a new defendant was the Coca-Cola Bottling Company of Wichita, in which its president and secretary and their wives and one other person were the directors. This company and N. L. Axton, of El Dorado, formed another corporation for the purpose of doing the same kind and character of business in El Dorado, of which the president and secretary were the same as in the Wichita company, and Axton was vice president. The Wichita company took one-third of the stock of the new company and Axton two-thirds, or 166⅔ shares. The name of the El Dorado company was the Coca-Cola Bottling and Ice Cream Company. The president and secretary conducted the business of the Wichita company and Axton was in full charge of the business of the El Dorado company. In February, 1928, the El Dorado company borrowed $4,000 from the El Dorado National Bank, and Axton personally indorsed the note.

In March, 1928, negotiations were commenced between Axton on one hand and the president and secretary on the other, for Axton to sell and transfer to the Wichita company all his stock in the El Dorado company, assignment of stock to be made at the time of the execution of the contract. In consideration of which sale and transfer of stock the Wichita company agreed to assume and discharge the indebtedness of the El Dorado company due to the El Dorado National Bank, not exceeding $4,000. This was reduced to writing and executed by Axton and by both companies on April 2, 1928. It provided that Axton should collect all outstanding accounts and assume and pay all current obligations.

The day this contract was signed the president of both companies was in El Dorado and asked Axton to introduce him to the officers of the plaintiff bank. Axton consented and took his stock with him to the bank, where he introduced the president as requested. The bank declined to accept a new note and release Axton. Later the president returned with a financial statement, and Axton accompanied him to the bank, where the officers again refused to accept a note of the Wichita company and release the old note. The employees at the El Dorado place of business were discharged very shortly after the contract was signed on April 2, and about the 15th of April the Wichita company placed one of its representatives in El Dorado to fill orders for the public.

After the note became due the bank brought this action against the El Dorado company and Axton. The Wichita company was brought in at the request of Axton to answer his cross petition based on the written contract to assume and discharge this indebtedness at the bank, not to exceed $4,000. The answer was as heretofore stated. The court after making findings and conclusions rendered judgment in favor of the plaintiff and against the El Dorado company and Axton on the note, and also a judgment in favor of Axton and against the Wichita company for $4,000, with interest at six per cent from April 2, 1928, the date of the contract.

Appellant insists that the evidence is undisputed that there was no performance of the contract by Axton with reference to the assignment and delivery of the stock. The evidence was that he was ready, able and willing to make delivery, but that is not evidence of performance or offer or tender of the stock. The court found in this connection that Axton took the stock with him when he went with the president to the bank, that he "has always been ready and able to transfer his stock in the El Dorado company whenever he was discharged from liability on the note," that "the Wichita company has never asked for the transfer of said stock," and that he tendered the same into court at the time of the trial. The findings and undisputed evidence do not in fact show an actual performance on Axton's part, nor a tender of the certificates of stock until during the trial, unless a tender may have been in the reply.

Where each of two contracting parties has a duty to perform there is no general rule which should perform first, except when it comes to the matter of enforcing the contract; then a performance or tender is usually necessary on the part of the one attempting to enforce the contract, before the other party can be compelled to perform his part. This is the position taken here by the appellant. However, the law never requires the doing of an unnecessary or futile thing, and if it is shown that a formal tender of the stock would not have accomplished anything, then it is not a necessary prerequisite to the right of Axton to enforce this contract. Exhibit 7, set out in the counter abstract of the appellee, is a letter from the appellant to Axton, dated April 25, 1928, and is as follows:

"As the matter now stands, we have no desire to take over the property belonging to this company, as the deal was only made by us with the understanding that the obligation to the El Dorado National Bank would be renewed from time to time until the property could be disposed of. Inasmuch

as the spirit, if not the letter of our understanding has been violated, we desire to withhold any further interest in the transaction."

In *Smethers v. Lindsay*, 89 Kan. 338, 131 Pac. 563, the tender of the purchase price for certain real estate was involved, and it was held "that a tender is unnecessary when its futility is shown."

In the case of *Grain Co. v. Elevator Co.*, 99 Kan. 712, 163 Pac. 450, it was held:

"A contract for the purchase of wheat contained the provision that to make a valid tender a bill of lading must be proffered. The seller advised the buyer of its readiness and willingness to ship two cars of the grain covered by the contract and was notified not to ship, that the buyer would turn down the drafts and refuse to accept. *Held*, that under these circumstances a formal tender was rendered unnecessary, the settled doctrine being that a tender or demand otherwise indispensable is no longer required when its futility is shown." (Syl. ¶ 1.)

The same rule was followed in *Woodard v. Timms*, 113 Kan. 413, 215 Pac. 456, with reference to the delivery or tender of oil stock in a matter involving the repurchase of the same.

This letter and the attitude of the appellant, as shown by the evidence and the findings, are sufficient to show that a tender of the stock would have been a futility and therefore not required.

Appellant next urges that the contract was executed upon the condition that the plaintiff bank would renew the note and continue to carry the loan and that Axton had given appellant assurance along this line before the contract was signed. The court found:

"There never was any agreement that the debt evidenced by the note sued upon could or would be discharged and assumed by the execution of a renewal note to said bank or that said bank would accept a note or obligation of the Wichita company in lieu of the note and indebtedness of the El Dorado company and Axton to said bank, or that the bank would extend credit to the Wichita company. There never was any agreement that liability on the contracts, exhibits A or B, was conditioned upon the bank doing any of these things and no agreement that said written contracts would be canceled or rendered ineffective if the bank should fail or refuse to do any of these things. The writing marked exhibit B contains all of the agreements between the parties, and the execution and delivery thereof was not upon any condition."

We are willing to accept appellant's theory as to a verbal condition under which a contract may be executed, as distinguished from an attempt to vary or alter the terms of a written contract, and we note the trial court admitted such evidence, presumably upon that theory, and the above-quoted finding of the court is apparently based upon all the testimony on that subject *pro* and *con*. But appellant says such finding "is contrary to the preponderance of the

evidence and for that reason the decision of the trial court should be reversed." The question of the preponderance of the evidence begins and ends in the trial court. If there is any evidence to support the finding, our duty is to uphold it, and since the term "preponderance" implies some evidence on each side, as there was, the finding must stand. (*Bortnick v. Cudahy Packing Co.*, 119 Kan. 864, 241 Pac. 442.)

Appellant assigns three reasons why the purchase of the stock of the El Dorado company was *ultra vires:* (*a*) Not authorized by the board of directors or vote of stockholders; (*b*) no power to answer for the debt of another; and (*c*) no power to purchase stock of the El Dorado company.

The trial court found that the Wichita company held meetings of its stockholders and its directors at various times before and after March and April, 1928, and that none of the matters or agreements out of which this controversy grew were ever submitted to or approved at a meeting of the stockholders or directors of the Wichita company, and that the president and secretary lived in Wichita, were in active charge and management of the company, and transacted all of its business.

In the first place our statute, R. S. 17-603, permits corporations to purchase and hold shares of stock in other corporations which shall be incorporated for the accomplishment of the same or similar purposes. The evidence and findings show that the purposes of these two companies were exactly the same. The president and secretary were such officers of both. The Wichita company already held one-third of the stock, which acquisition had by the rule of acquiescence been approved by the board. It is said in 7 R. C. L. 451:

"A person dealing with the president of a corporation in the usual manner, and within the powers which the president has been accustomed to exercise without the dissent of the directors, is entitled to assume that the president has actually been invested with those powers. Intrusting the president with the management of the entire business is not the delegation of corporate rights and powers, but is a mere authorization of the president to perform, for and in the name of the corporation, the business it is authorized to transact."

Of course, there are necessary and proper precautions in such authorizations in order to protect innocent stockholders against reckless or unwise actions of executive officers. But no court can easily dismiss from the picture in this case the finding that this was virtually a two-man company, and they both signed the contract.

The wives of these two men and one other party constituted the board. These two men were the only witnesses for the company to protect it and its innocent stockholders against their unauthorized acts. But this is not all there was in the picture. Thirteen days after the contract had been signed and the El Dorado place of business had been closed, the Wichita company located one of its own representatives in El Dorado to fill orders in its line of business—an opportunity and advantage which could not have been so well enjoyed without the making of this contract, a method very much in line with the mergers of the present day. The taking advantage of this open field made so by the contract amounted to a ratification by the board. (*Morisette v. Howard,* 62 Kan. 463, 63 Pac. 756.)

It is said this contract was made to relieve Axton of his financial embarrassment, and that it was answering the debt of another, but that has to be read into the written contract. There is nothing in the contract about either of these propositions. There is something about the purchase of 166⅔ shares of stock and about the appellant indirectly through the purchase of the balance of the stock getting all of the stock, equipment and other assets of the El Dorado company free of any claims or demands. We must assume the two business men were possessed of ordinary business judgment, at least, and not think of them as being moved to make this deal just to relieve Axton from embarrassment.

We have examined the authorities cited by the appellant but do not see how they change the situation as applied to the facts and findings in this case. We think the appellant company was not exceeding its power in purchasing the remainder of the stock of the new company in which it had for some time owned one-third of the stock, that the contract was for the purchase of stock and not to assume the debt of another, and that if authorization was lacking the action of the officers signing the contract was ratified by the acquiescence of the board and by appropriating to itself the benefits and opportunities afforded by acquiring a new and additional field in its line of business.

As to the cross appeal alleging error in not allowing appellee interest at the rate of ten per cent, instead of six per cent, we think there was no error. If this were an action for damages, the argument might be appropriate, but it is a suit upon a contract where no rate is mentioned, and consequently it should be six per cent.

The judgment is affirmed.