No. 33,249

L. L. Taylor (Claud M. Cave, substituted), *Appellee*, v. (Joseph F. Frandt et al.) Day Monroe, *Appellant*.

(65 P. 2d 264)

Opinion filed
March 6, 1937.

*Lee Monroe,* of Topeka, and *W. M. Glenn,* of Tribune, for the appellant.
*Carl Van Riper,* of Dodge City, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to quiet title. Plaintiff prevailed, and the defendant, Day Monroe, appeals.

We are first confronted with a motion to dismiss the appeal. There is some merit in the motion, but we have concluded to dispose of the case on its merits.

The action involves title to a quarter section of land in Greeley county. Claud M. Cave, grantor of L. L. Taylor, was substituted as plaintiff. Appellee brought the action while in possession of the land and claims title by virtue of two tax deeds executed in 1894 and 1904, a sheriff's deed on mortgage foreclosure, issued and recorded in 1907, and rights accruing to him under facts herein narrated. The correct name of defendant, Joseph F. Frandt, is Joseph F. Traudt. He acquired the land from the United States government by preëmption. It appears that for the final payment to the government a receipt was issued in 1887, which was recorded showing the name of the purchaser as Joseph F. Frandt. The patent was issued to Joseph F. Traudt, but was not recorded in Greeley county until October 7, 1910. Traudt conveyed the land to one Stewart in 1918; Stewart conveyed it to McEnery, and the latter conveyed it to the appellant, Monroe, on September 17, 1931. This action was filed on the 10th day of November, 1933.

The first tax deed was issued September 1, 1894, and was later transferred to Charles E. Gibson. The second tax deed was issued to Charles E. Gibson on June 25, 1904. Both tax deeds were promptly recorded. The first tax deed included the taxes for the years 1889 to 1891, inclusive. The taxes for 1892 and 1893 were paid by the holder of the first tax deed. The second tax deed was a compromise tax deed and covered tax payments for the years 1894 to 1903, inclusive. All subsequent taxes were paid by Charles E. Gibson and his successors in title, including appellee. The original

patentee, Traudt, and his successors in interest, including appellant, have paid no taxes on the property since the year 1888.

Immediately upon the receipt of the final preëmption payment in 1887, Traudt executed a mortgage on the land. In the body of the mortgage his name was written as Joseph F. Frandt, but signed and acknowledged as Traudt, which, as stated, was his correct name. The mortgage became due and Charles E. Gibson instituted foreclosure proceedings and obtained service by publication. A default judgment was rendered. A sheriff's deed was issued to Gibson in May, 1907. In all of the papers involved in this litigation, including the sheriff's deed, Traudt was named as Joseph F. Frandt, and his wife as Mrs. Frandt. The original note and mortgage were attached to the petition and are now a part of the files in the clerk's office.

In the instant case, appropriate and sufficient issues were joined by the pleadings to embrace the judgment rendered. The trial court made findings of fact and conclusions of law. In addition to the facts heretofore stated, the facts essential to a determination of the issues raised and embraced in the findings were:

"12. There is no direct evidence as to the condition of the land as to occupancy on September 1, 1894, that being the date of the issuance of the first tax deed to Henry C. Wilson, trustee. There is evidence that the land in question was vacant and unoccupied, unfenced and unimproved, and in a prairie state, in 1915. There is evidence that in the spring of 1930 the land was taken possession of by Thomas J. Baty, and at that time the 60 acres that had not been broken out in previous years was still unbroken and in the original prairie condition, and that the 100 acres that had been broken by Harper had reverted largely to a sod condition again. There is also evidence that the original patent title holder never paid any taxes on the land after the year 1888, and that none of his successors in interest have ever paid any taxes. *From all this evidence it seems fair to infer that in all probability the land was vacant and unoccupied since the issuance of the first tax deed, and the court so finds.*

"The court finds that on April 3, 1926, the land was vacant and unoccupied, unfenced and unimproved, and that on that date James D. McEnery executed to one A. A. Harper a lease providing for the breaking out of 100 acres of the land and the sowing of the same to wheat in the fall of 1926, and again in 1927 and 1928. Said lease was recorded September 1, 1927, in book 4 M at page 33, in the office of the register of deeds of Greeley county, Kansas. Said lease was not acknowledged before a notary public or other officer. Said land was then vacant, unoccupied and unfenced. During the year 1926 said A. A. Harper broke out 100 acres of sod on said land with the intention to plant the same to wheat that fall, but turned the possession of said land and his lease over to one R. A. Paul; that said R. A. Paul planted said 100 acres of

sod which had been broken out by said A. A. Harper to wheat in the fall of 1926; that the wheat crop was so poor that it was not worth cutting; that said R. A. Paul did cut one row around the field with a header but did nothing further toward harvesting the same, for the reason that he did not deem it worth harvesting. There was no further cultivation of said land or planting of crops on it by either said A. A. Harper or R. A. Paul, *or anyone else, or any other use or occupancy of said land by anyone* until the spring of 1930, at which time Claud M. Cave, shortly after purchasing the land from Thomas J. Baty, had the entire quarter broken and planted to wheat in the fall of 1930, and since that time said Claude M. Cave has continuously occupied the entire quarter and each year cultivated and farmed said land and planted the whole of it to wheat, and now has a crop of wheat growing thereon; that at the time said Claud M. Cave took possession of said land in the spring of 1930, the 100 acres which had been broken out in 1926 by A. A. Harper had gone back to grass and said land at *all times after the abandonment of said lease by R. A. Paul remained unimproved, unfenced and unoccupied except as hereinbefore set forth.*

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"14. The said Joseph F. Traudt and his grantees, namely, M. D. Stewart, James D. McEnery and Day Monroe, nor any of them, ever made any claim to Claud M. Cave or said anything to him about claiming or owning the land; that they never at any time objected to or interfered with his taking possession of the land in the spring of 1930, or in holding possession of the premises as set forth in these findings until the answer in this action. There is no evidence tending to show that either or any of them had actual notice or knowledge of such holding or taking possession until the commencement of this suit. There is no evidence from which the court would feel justified in finding that the said Joseph F. Traudt, and his said grantees, or any of them, were ever in the actual possession of land in controversy other than the possession taken by A. A. Harper and R. A. Paul under the lease as set forth in finding No. 12, but the court does find that said defendant James D. McEnery was in the actual possession of said land by tenant from the spring of 1926 until the summer of 1927, *but that such possession was voluntarily abandoned prior to the expiration of two years from the time such possession was first taken."* (Italics inserted.)

The conclusions of law were:

"1. That the tax deed to Henry C. Wilson, trustee, of date September 1, 1894, mentioned in finding of fact No. 6, is valid on its face; that said tax deed is voidable for irregularities in the tax proceedings upon which it is based.

"2. That the tax deed issued to Charles E. Gibson, dated July 9, 1904, referred to in finding of fact No. 8, is valid on its face; that said tax deed is void for irregularities in the tax proceedings upon which it is based.

"3. That from the time of the issuance of the first of said tax deeds the defendant Day Monroe, nor those under whom he claims, namely, Joseph F. Traudt, M. D. Stewart, James D. McEnery, nor any of them, have had or held actual possession of the land in controversy for as long a period as two years, and that said tax deeds have not been rendered void or ineffectual be-

cause of actual adverse possession by the original patent title holder or his grantees.

"4. That the names Frandt and Traudt are not *idem sonans;* that the judgment in the foreclosure action of *Charles É. Gibson v. Joseph F. Frandt et al.,* No. 573, in the district court of Greeley county, Kansas, referred to in finding of fact No. 5, was in and of itself void and ineffectual to bar and foreclose his interest and title to the premises for the want of valid service of summons or notice of the same by publication upon him.

"5. That the plaintiff is the owner of all the right, title and interest acquired by Charles E. Gibson under and by virtue of the note and mortgage described and referred to in finding of fact No. 3 and finding of fact No. 5 and under the sheriff's deed therein mentioned; and is also the owner of all the right, title and interest conveyed by the tax deeds described and referred to in finding of fact No. 6 and finding of fact No. 8; and was at the time of the commencement of this action in the lawful, quiet, peaceable and actual possession of the land in controversy, and at said time had had such actual, quiet and peaceable possession since on or about the month of April, 1930.

"6. That the defendant Day Monroe is barred from maintaining his claim of title to the land in controversy by virtue of the five-years statute of limitations, namely, the first subsection of section 60-304, R. S., reading as follows: 'An action for the recovery of real property sold on execution, brought by the execution debtor, his heirs, or any person claiming under him, by title acquired after the date of the judgment, within five years after the date of recording of the deed made in pursuance of the sale.'

"7. That the plaintiff on the facts as found in this case is entitled to a judgment herein quieting his title against the defendants as prayed in his petition."

Appellant's first complaint concerns certain portions of the findings of fact. We shall note those complained of in the appeal. The italicized portions of the findings are objected to by appellant as being unsupported by evidence. We have carefully examined the record and find such findings were supported either by direct evidence or by reasonable inferences which the trier of the facts was justified in making. The only question which then remains is whether the findings support the judgment quieting title in appellee. We think they do.

For the moment we shall ignore conclusions of law number four and six pertaining to the validity of the sheriff's deed on mortgage foreclosure and the effect of the statute of limitations, G. S. 1935, 60-304, *first,* pertaining thereto. Let us then consider appellee's rights under the tax deeds in the light of all the circumstances.

Appellant contends the trial court found the tax deeds to be void. Conclusions of law one and two do not so indicate. No record is presented by the abstracts upon which we can determine whether

the tax deeds were void or merely voidable, and we must therefore accept the findings as contained in conclusions one and two as correct. We need in fact consider only the first tax deed. It was valid on its face and only voidable by reason of irregularities in the proceedings upon which it was based. It has existed since 1894 and has never been set aside.

Appellant next insists appellee did not acquire possession within two years after the recording of either of the tax deeds; that at most he had constructive possession and that is not sufficient to afford ground for affirmative relief. The important facts to be remembered in this lawsuit are: first, this land was all vacant and unoccupied between 1894, the date of the first tax deed, and 1926, a period of thirty-two years; second, the tax deeds were valid on their face; third, the only actual possession by appellant and her predecessors in title between 1894 and March, 1935, the date of judgment, a period of forty-one years, was during a brief, temporary period in the years 1926 and 1927, of less than two years; fourth, appellant and her successors in title paid no taxes on this land after 1888. These taxes were all paid by appellee and his predecessors in title.

Touching the contention that the holder of the tax title did not take actual possession nor bring an action within two years to obtain possession, it must be remembered the land was vacant and unoccupied and hence it was unnecessary to obtain possession in two years. In the early case of *Myers v. Coonradt,* 28 Kan. 211, involving vacant land, it was held:

"Where a tax deed, prima facie valid, but in fact voidable, is issued and recorded, and the land is at the time and for two years thereafter continues vacant and unoccupied, *held,* that if subsequently the original owner enters and takes possession, the holder of the tax title is not barred by subdivision third of paragraph 16, code of civil procedure, from maintaining an action for the recovery of possession." (Syl. ¶ 1.)

In the body of the opinion, and with regard to vacant land, it was said:

"Plaintiff insists that, as defendant brought no action within two years from the date of the recording of the tax deed, his tax title failed, and all right to the land ceased, and this under the third subdivision of section 16 of the code of civil procedure. In this he is mistaken." (p. 214.) (G. S. 1935, 60-304, 3d.)

It has been held that if a tax deed to vacant and unoccupied land is valid, constructive possession of it passes to the grantee by

operation of law. (*Myers v. Coonradt,* supra; *Trager v. Elliott,* 106 Kan. 228, 187 Pac. 875.) It has also been held if the land was vacant, the effect was the same as though the tax-title holder were in actual possession. (*Jones v. Sadler,* 75 Kan. 380, 381, 89 Pac. 1019.) It thus follows there was no need of taking physical possession. There was no occasion for bringing a suit to recover possession from another. The reason is obvious. No cause of action had accrued against another until such other took possession. (*Myers v. Coonradt,* supra.) If the fee-title holder thereafter takes possession, then the tax-title holder must acquire possession peaceably or commence an action before such adverse possession is held for two years. (*Trager v. Elliott,* and cases cited.) In *Jones v. Sadler* it was held:

"If one who is in the occupancy of real estate under a tax deed can ever be ejected upon the ground that he failed to assert his rights under it within two years, it can only be upon an *affirmative showing* of an adverse possession for that period." (Syl. ¶ 2.) (Italics inserted.) See, also, *Taylor v. Adams,* 79 Kan. 360, 362, 99 Pac. 597.

In the instant case the lessee of the fee-title holder abandoned actual possession in 1927, after having occupied the land for less than two years. There was no affirmative showing the fee-title holder or anyone in his behalf ever occupied it thereafter. Failure of appellee to commence an action for possession within two years after the commencement of possession by the fee-title holder in 1926 did not therefore defeat appellee's title.

Appellant insists constructive possession, however, is not sufficient to afford grounds for affirmative relief to the holder of a tax deed. In support of the contention he cites *Stump v. Burnett,* 67 Kan. 589, 73 Pac. 894. To the same effect is *Buehler v. Teeter,* 84 Kan. 281, 285, 114 Pac. 387. Appellant overlooks the fact appellee's possession was more than merely constructive. Appellee and his predecessors paid the taxes on the land for forty-six years, almost a half century. This included the year 1926, when appellant's predecessor in title took possession, and the year 1927, during which it was abandoned. The land was vacant and unoccupied for a period of thirty-two years, during which period the effect of appellee's tax deed was the same as though he were in actual possession. The tax-title holder was in physical possession when he instituted this suit, and had been in such possession since April, 1930. He was in possession not only **by virt**ue of his rights under

the tax deeds but was also a mortgagee in possession. That he was in possession as a mortgagee follows even though it be granted no title was acquired by reason of the sheriff's deed on mortgage foreclosure in 1907, and even though appellant was not barred under G. S. 1935, 60-304, *first*. Furthermore, this was a suit in equity. Appellant prays for possession of the land and asks that appellee be enjoined and forever barred from asserting any claim, interest or lien against the land. She, however, does not offer to do equity. She makes no offer to reimburse appellee for taxes paid over a period of almost half a century.

From what has been said it follows we need not discuss whether appellant was also barred from maintaining claim to title under the sheriff's deed by virtue of G. S. 1935, 60-304, *first*.

The judgment is affirmed.