No. 36,502

HOME OWNERS' LOAN CORPORATION, *Appellant*, v. A. P. OAKSON et al., *Appellees.*

(173 P. 2d 257)

Opinion filed October 12, 1946.

*Ernest E. Blincoe*, of Fort Scott, argued the cause, and *Mose Silverman*, of Omaha, Neb., was on the briefs for the appellant.

*Ben W. Weir*, of Pittsburg, argued the cause, and *J. P. Gendusa*, of Pittsburg, was on the briefs for the appellees.

The opinion of the court was delivered by

BURCH, J.: This is a mortgage-foreclosure case in which the

district court granted reformation of the mortgage because of a mutual mistake in the description of the part of the property and improvements intended to be covered by the mortgage. The appellant contends that the evidence did not establish any mutual mistake and that the appellee is estopped to assert such a mistake even if it occurred. A. P. Oakson will be considered as the appellee although the action has been revived against his heirs and administrator. The substance of the essential facts follows:

The appellee executed and made default in the payment of a note secured by a mortgage upon lot 1, block 3, East Pittsburg, Kan., which lot is 175 feet east and west and 50 feet north and south and has located thereon a residence, fish pond and garage, and also a commercial building which is 20 feet wide in front and 40 feet wide in the rear and is 50 feet long. Such commercial building is constructed upon the east 70 feet of the involved lot. The appellee contends that the mortgage should not have covered the east 70 feet of the lot or the improvement constructed thereon even though such east 70 feet was included in the land described in the mortgage. The petition filed by the appellant sought foreclosure of the mortgage upon the entire lot. Judgment was entered against the appellee by default following personal service. There is some contention that the judgment was not properly so entered but that question is not decisive of the appeal because the district court subsequently set aside the default judgment insofar as it affected the east 70 feet of the lot and the improvement thereon. The appellee does not question the validity of the judgment of foreclosure insofar as it affects the other portion of the lot. The judgment of foreclosure was set aside as to the east 70 feet at the conclusion of the following post-default judgment proceedings.

Appellee contends that he did not know any attempt had been made by the appellant to foreclose a mortgage upon the east 70 feet of the lot and the improvement thereon until long after a sheriff's sale had been made following the default judgment and the period of redemption had run and a sheriff's deed had been delivered to the appellant as the purchaser. Thereafter on May 4, 1938, a writ of assistance was issued. When such writ was served upon the appellee he then learned for the first time, according to his contention, that the mortgage had been foreclosed against the entire lot and all improvements thereon. As a consequence counsel in his behalf filed a motion to stay the service of the writ and

thereafter filed a petition for a new trial. A hearing was had on the petition for a new trial and a new trial was granted to the appellee. Subsequent to such order the appellee filed an answer to the amended petition of the appellant in which it was asserted by the appellee that the mortgage should not have covered the east 70 feet of the lot and that it was included by reason of a mutual mistake of fact. The answer further alleged that the appellant, by its rules, could not have accepted or executed a mortgage on real estate on which there was located a building used for commercial purposes. A number of pleadings were filed and withdrawn and on July 24, 1942, the appellant filed a reply alleging, among other things, that the answer filed by the appellee did not constitute a defense; that the appellant, at the sheriff's sale, bid as the purchase price for all of said property the full amount of its judgment and costs; that the court could not set aside the judgment without requiring the appellee to repay the appellant a substantial portion of its bid; that the court, in so doing, would be taking the appellant's property without due process of law and in violation of the constitution of the United States. The reply also denied that there had been any mutual mistake of fact and alleged that by its rules and regulations it could accept a mortgage on real estate on which was located a building used for commercial or business purposes. The appellant in its reply further alleged that it was without power to advance money for the payment of liens on property other than that mortgaged to it; that the appellee was guilty of laches and inequitable conduct; that in connection therewith the appellee had accepted from the appellant credits based upon the assumption that the mortgage covered all of the property, and that, therefore, the appellee was estopped from questioning the validity of the mortgage. By way of further estoppel the appellant's reply averred that the appellee had requested the appellant to advance and pay all liens and taxes on the entire property at the time the mortgage was made, and that appellant had done so and also had paid subsequent taxes and that by reason thereof the appellee, having accepted and received the benefits thereof, was estopped from questioning the validity of the appellant's mortgage on all of lot 1.

Upon issues drawn by such pleadings the new trial was had on the question of whether the lien of the mortgage should be set aside insofar as it affected the east 70 feet of lot 1. After hearing the evidence the district court took the matter under advisement,

considered requested findings of fact and conclusions of law, filed its own findings of fact and conclusions of law and entered judgment as of February 14, 1946, holding that the mortgage did not cover the east 70 feet of lot 1, and that no lien was created thereon by reason of the mortgage. Motions for additional findings of fact, to set aside findings of fact and conclusions of law, and for a new trial, were filed in due time, argued and overruled, from all of which the appellant appealed.

1. The first contention of the appellant is that there was no evidence of mutual mistake of fact as to whether the mortgage covered all of lot 1. In other words, we are asked to set aside the finding and judgment of the trial court to such effect upon the ground that there was no evidence whatever introduced showing mutual mistake. Such contention compels a search of the record. The appellee testified that one Carlin Decker appraised the property on behalf of the appellant and that after looking over the inside and outside of the house, Decker said that the lot would have to be divided as he could not make a loan on the store building. The appellee testified further as follows:

"We did not step the lot off, but he was standing by the east end of the lily pool at a crack in the sidewalk and he said, 'This is all we want.' I have since measured from that crack in the sidewalk and the distance is 105 feet to the west end of the lot and 70 feet to the east end. I think Mr. Decker came out there twice and I had a further conversation with him about the store building not being in the mortgage and 'He told me to take some pictures and be sure not to get that store building in there.'"

Reprints of the pictures were introduced and they do not show the store building. The pictures consist of different views of the house on which the mortgage was given. The appellee also testified:

"After my application to the Home Owners' Loan Corporation for a loan, I received instructions from the Home Owners' Loan Corporation to get insurance on the property covered by the mortgage and I took out insurance on the dwelling house and garage. There was never anything said about taking out insurance on the store building. I am not familiar with land descriptions and the handling of legal titles of land. The Home Owners' Loan Corporation fixed up the form of the mortgage for me to sign. I do not know whether the mortgage was mailed to me or not, but I did sign the mortgage in this case. I did not know at the time I signed the mortgage that it included the store building. . . . I didn't read the description in the mortgage. . . . I just supposed it was going to be like they said it was going to be. I was taking their word for it. I supposed they would divide my lot off like they did all the rest of them. . . ."

Carlin Decker, who made the appraisement as an employee of the appellant, testified in behalf of the appellee as follows:

"My duties were to appraise homes. . . . During the time I was appraising I appraised the Oakson property on East Fourth Street. I was there a couple of times. I saw Mr. Oakson on those trips. On Lot 1, in Block 3, of the Original Town of Pittsburg, there is a house on the west end of the lot and a garage around the middle of the lot and a store building on the east end. There is also a lily pool or fish pool there. I appraised the garage and I appraised the house, and there wasn't a definite line, but I didn't appraise the store building because the store building couldn't go and just wasn't in there. That is all. I didn't step off the lot, but in company with Mr. Oakson we stood at a point just east of the fish pool and from that point I appraised the west part of the lot with the house and garage. I instructed Oakson to have pictures made of the house. Well, I told him to take a picture of the house and garage. That is the words I used.

"Q. Did you say anything about leaving out anything or not showing anything? A. Well, the store building couldn't have been put in the loan. I think I told him not to do that. I know I told him not to do that.

. . . . . . . . . . . . .

"Q. Did you determine in the Oakson case and report to the Company that the dwelling, garage and lily pool was sufficient to carry the whole loan? A. Yes, sir.

"Q. And that was leaving out the store building? A. Yes, sir."

The witness was interrogated also about his appraisal report which was introduced as appellant's exhibit 7. He testified as follows:

"From this report I can tell that I appraised the house and garage. There is also mention of the value of the fish pool. It was appraised at $80. I appraised the house at $3,500, the garage at $200, the driveway at $75, the fish pool at $80, making a total of $3,855. I did not appraise anything else at that time and the appraisal blank does not show anything else."

· On recross-examination the witness testified as follows:

"Q. This property you appraised when you appraised the dwelling and so forth, fish pond and garage, you appraised all of the lot, didn't you? A. No, no, I didn't.

. . . . . . . . . . . . .

"Q. And that is what that loan was given on, wasn't it? A. No, my instructions were, as I told you before, that a business building could not go in on a loan that was written."

In addition, two lawyers, formerly employed by the appellant, testified that certain instructions were received by them to the effect that "Where the home is clearly incidental to the business the loan is ineligible." The application for the loan, introduced as appellant's exhibit 3, describes the home of the appellee, giving in

minute detail its size, number of rooms, baths, height of foundation, size of basement, kind of roof, plumbing, utilities, and it also shows that the outbuildings or other improvements consisted only of a double garage. In the application nothing whatever was shown as to any business or commercial building upon the property. The exhibit also shows that the house originally cost $6,000 and that improvements since made cost $700, and that they consisted of a sleeping porch. Again, nothing is shown as to the cost of the business property or any improvements thereto. The appellant's exhibit E, which was the statement of insurance accompanying the loan, clearly sets forth that the aggregate amount of insurance was $2,700, of which $2,500 was written to cover the house, and $200 was written to cover the garage. No insurance whatever is shown as being carried upon the business building, according to the exhibit.

Other evidence might be reviewed but sufficient has been set forth to demonstrate clearly that there was adequate evidence, both oral and documentary, to support the finding of the trial court to the effect that it was never intended by either of the parties that the mortgage should cover the business or commercial building on the east end of the lot. True it is that the appellant offered evidence to the contrary, some of it documentary and some of it consisting of testimony of official representatives of the company, to the effect that in the circumstances outlined in this case the appellant was entitled to make loans upon business property as long as it was included in a single piece of real estate. Appellant's witness testified that in instances where there was one description of lot and residence and the property also had on it a business building, there was no exclusion in the law or regulations prohibiting taking a mortgage on the entire tract which would include the business property as well as the residence. In other words, there was a conflict of evidence upon such point and others, but this court ordinarily is not concerned with conflicting evidence even in an equity case. If the trial court's findings are supported by substantial competent evidence they will not be disturbed upon appeal unless they are based wholly upon depositions or documentary evidence which convinces this court, upon review, that the wrong conclusion was reached. Such a general rule has been in effect in this state so long that it hardly warrants citation of authorities. However, see *Doman Hunting & Fishing Ass'n v. Doman*, 159 Kan. 439, 155 P. 2d 438, and cases therein cited. Counsel for appellant, however, call

our attention to the rule that a written instrument can only be reformed for mutual mistake when the proof is clear, convincing and satisfactory to the trial court (citing *Federal Land Bank v. Bailey,* 156 Kan. 464, 134 Pac. 409). In the cited case the evidence was oral and circumstantial. In the instant case the evidence was oral, circumstantial and documentary, and as was said in the cited case "was quite sufficient to meet the exacting standard required to warrant the judicial reformation of a written instrument." The fact that the appellee did not carefully read or examine the mortgage before he signed it is not fatal to its reformation according to our decisions. See *Zuspann v. Roy,* 102 Kan. 188, 170 Pac. 387, from which paragraph three of the syllabus is quoted as follows:

"A mutual mistake in a deed conveying real property may be shown, although the parties thereto did not, before it was signed, carefully examine it to ascertain whether it expressed their agreement."

See, also, *Russell v. Ely,* 133 Kan. 318, at 321, 299 Pac. 619, and the recent case of *Hough v. Munford,* 160 Kan. 572, 164 P. 2d 92. It follows that appellant's first contention cannot be sustained.

2. Appellant contends, however, that even if there was a mutual mistake of fact the court, upon its findings and the record, should not have reformed the mortgage because the appellee was estopped from asserting a mutual mistake of fact. In support of such contention it is asserted that according to the undisputed evidence the appellant paid the taxes on all of lot 1, including the commercial building thereon, from 1931 to 1938, inclusive, and all liens thereon, at the request and with the acquiescence and knowledge of the appellee and that the appellee has never paid or tendered to the appellant the amount of the taxes which the appellant paid on the commercial building and which the appellee claims was not covered by the mortgage. The problem presented by such contentions is somewhat complex. In approaching the problem we note that the appellee denies the contention to the effect that he ever requested the appellant to pay any taxes upon any part or the whole of the property at any time. To the contrary, the appellee insists that the appellant required that the taxes and all other liens which were upon the property at the time the loan and mortgage were originally made be paid from the proceeds of the loan. Application for the loan was made on the 27th day of September, 1933. The application was made for the purpose of obtaining money to pay off a prior mortgage upon the entire property and also all other liens, including taxes and

assessments. According to the court's finding No. 19 the proceeds of the loan were disbursed to pay the existing mortgage, and interest, to F. C. Werner, in the amount of $1,106.41, a lien to the Baxter Lumber & Mercantile Company in the amount of $75.44, and to the county treasurer of Crawford county, Kansas, for taxes on the property in the amount of $280.81. These items, together with six other miscellaneous items, aggregate the proceeds of the loan, to wit, $1,579.74. The court also found (finding No. 20), that the aforesaid mortgage lien and taxes were liens on all of lot 1. In finding No. 21, the court held that the appellant, at the request of the appellee, paid on November 17, 1934, the amount necessary to redeem the outstanding tax certificates for the years 1931, 1932, 1933 and 1934. Thus, it will be seen that from the proceeds of the loan the 1934 taxes and all prior taxes were paid. Unquestionably, the appellee had a right to direct, or at least to acquiesce in, the disbursement of the proceeds of the loan. Since the taxes and all other specific liens hereinbefore mentioned were against the entire property, including the west 105 feet as well as the east 70 feet, it was necessary that the same be paid off in order to clear the title to the whole or any part of the property. Finding of fact No. 21, however, goes further and sets forth that in addition to the payments made by the appellant on behalf of the appellee from the proceeds of the loan the appellant paid the 1935 taxes and the first half of the 1936 taxes, aggregating $218.75, also the last half of the 1936 taxes in the amount of $40.41, the 1937 taxes in full in the amount of $76.58, and also the 1938 taxes in full in the amount of $80.51. The record in this court, however, does not disclose when the 1935 taxes or the first half of the 1936 taxes were paid and we are unable to ascertain from the record whether the appellant has paid the whole or any part of the taxes for the year 1939 and for any or all years subsequent thereto. In the record appears a stipulation reading as follows:

"It is stipulated and agreed between counsel that if the County Treasurer was called, sworn and testified as to the records in his office as to the property in controversy, towit: Lot 1, that it would show for the 1943 taxes to the Home Owners' Loan Corporation the west 105 feet, which is the tract described by the Sheriff's deed, that it is valued at $1,425, and that the east 70 feet stands in the name of defendant Oakson, and is valued at $650."

From the stipulation we might assume that the appellee has paid, or at least that the appellant has not paid, the taxes upon the east 70 feet for the year 1943 and for all years subsequent thereto but

the incertitude incident to the tax payments is such that this court should not indulge in any presumptions relative thereto. We are, however, justified from the record in concluding that the district court's finding No. 33 was correct. Such finding reads as follows:

"That said Defendant [appellee] has never paid or tendered to the plaintiff [appellant] the proportionate amount of the taxes or proportionate amount of the mortgages and other liens paid by the Plaintiff which covered the entire tract including the East 70 feet of said Lot One."

As before stated, the appellant contends that the failure on the part of the appellee to make such tender is fatal to appellee's right to request a modification of the mortgage. Appellant asserts that before appellee could have insisted upon a reformation of the mortgage in equity it was incumbent upon the appellee to offer to do equity. The appellant argues that the appellee cannot retain the benefit of the payments made from time to time in satisfaction of the taxes on the east 70 feet of the property and at the same time have the mortgage reformed in such manner that the appellee can take the commercial building and the land upon which it is located, free from taxes paid by the appellant, and not reimburse the appellant in any manner therefor.

The court is convinced that the appellant cannot complain of or seek reimbursement for any part of the taxes paid in connection with the disbursement of the proceeds of the loan. Appellant is not entitled, therefore, to any reimbursement for taxes paid which accrued against the property for the years 1931 to 1934, inclusive. It was necessary to pay such taxes in order for appellant's mortgage to be a first and prior lien upon any part of the whole of the property described in the mortgage. Such is also true with reference to any and all other liens which were paid off from the proceeds of the loan. Therefore, appellant is not entitled to any reimbursement for payments made from the proceeds of the loan and such is true regardless of any law or rules which may have prohibited the company from paying off liens upon property other than that covered by the mortgage. The mortgagor had the right to direct what disposition should be made of the proceeds of the loan, and the mortgagee, in order to clear the title to the property, either acquiesced in or insisted upon such payments being made. In such circumstances the appellant cannot now recover back any portion of the loan proceeds on the theory that it did not have authority to make such payments and that its acts were *ultra vires*. Since

appellant cannot recover from the appellee any part of the proceeds on the loan no estoppel can arise against appellee because of his failure to offer appellant payment of the same. One cannot be estopped by accepting that which he is legally entitled to receive.

3. The foregoing does not dispose, however, of the contention of the appellant to the effect that the appellee should have offered to and should have been required to reimburse the appellant for a proper proportion of the taxes which the appellant paid for the year 1935 and for any years subsequent thereto. We are forced to indulge in conjecture because of the condition of the record but apparently there had not been any division of lot 1 into two tracts and separately assessed valuation fixed on the same for tax purposes until some undisclosed date in 1943. Therefore, when the appellee discovered the alleged error in the description at the time the writ of assistance was issued on May 4, 1938, he could not have known the proportion of the back taxes for which he might have been liable and, of course, he could not have anticipated the final result of the litigation. Consequently, the question arises for decision whether the failure on the part of the appellee to tender or offer to pay an unknown and undetermined portion of the taxes accruing for the year 1935 and for any years subsequent thereto estopped the appellee from claiming the right to have the mortgage reformed. Appellant insists that the failure on the part of the appellee to offer to do equity is fatal to his right to have the mortgage reformed in equity on the theory that he who seeks equity must do or offer to do equity. There can be no question but what the appellee was liable for the payment of his proper proportion of the taxes paid by the appellant on the entire lot accruing for the year 1935 and for any years subsequent thereto. At the time such taxes accrued and were paid by the appellant the mortgage had not been reformed and it contained a paragraph providing that if default occurred in the payment of any taxes or assessments on the part of the appellee the appellant might pay such taxes, and that the amount so paid should be a further lien on the premises, payable forthwith, with interest at the rate of six per centum per annum. Not only was appellee liable under the provisions of the mortgage for payment of his proportion of such taxes but in certain instances there probably was a statutory liability upon him under and by reason of the provisions of G. S. 1935, 60-3443, and in other instances under and by reason of the provisions of G. S. 1935, 79-2901

and 79-2902, insofar as they are applicable. Therefore, we are forced to face squarely the question whether appellee's failure to admit the liability and to offer to pay the same estops him from asserting any right to have the mortgage reformed. Examination of the pleadings filed in behalf of the appellee, including the answer which he filed after petition for a new trial had been allowed, fails to disclose that he at any time in his pleadings offered to reimburse the appellant for any proper proportion of the taxes paid by it, and moreover, the district court found in special finding of fact No. 33 "That said defendant has never paid or tendered to the plaintiff the proportionate amount of the taxes or proportionate amount of the mortgages and other liens paid by the plaintiff which covered the entire tract including the east 70 feet of said lot one." The "mortgages and other liens" referred to in the court's finding must refer to those paid from the proceeds of the original loan and, therefore, we have already herein considered such items. The failure to pay or offer to pay the subsequent taxes, however, requires further consideration.

The equity maxim which the appellant seeks to invoke ordinarily is stated, according to 30 C. J. S. 458, § 90:

"He who seeks equity must do equity. . . ."

and the text states that:

". . . it is the invention of a court of chancery for regulating its own procedure, in the application of which the court, not as an inflexible rule, exercises discretion in the interest of equity and justice."

The text continues, under section 91 at page 461, to amplify the maxim as follows:

"The maxim requires that a person seeking relief in equity, shall have accorded, shall offer to accord, *or will be compelled to accord,* to the other party all his equitable rights with respect to the subject matter in controversy. *However, the maxim does not apply so as to defeat equity and will not require a person to sacrifice his own rights.*" (Emphasis supplied.)

Continuing, the text reads:

"It means that he who seeks the aid of an equity court subjects himself to the imposition of such terms as the settled principles of equity require . . . The offer to do equity within the meaning of the maxim *is a matter of pleading,* but the doing of equity is a condition on which the relief, if any, is to be granted." (p. 461, § 91.)

Annotations supporting the text cite the case of *Jones v. McGonigle,* 327 Mo. 457, 37 S. W. 2d 892, 74 A. L. R. 550, from which the following is quoted:

"We do not think that the enforcement of the principle of equity—that he who seeks equity must do equity—is dependent upon any manner or form of pleading, but its true application is in the form, conditions, and provisions of the orders and decrees of the court whereby equitable terms are imposed as a condition precedent to the equitable relief granted. . . . At 21 C. J. 174, the rule is stated thus: 'The maxim requires that any person asking the aid of equity . . . will be compelled to accord to the other party all equitable rights to which the other is entitled in respect to the subject matter. Relief inconsistent with the equities of the adverse party will be denied, and where the granting of the relief raises equitable rights in favor of defendant, the according of such rights will be imposed as a condition of granting the relief.'

"The application of the foregoing rules is made by a court of equity in its decree and orders and is not dependent upon what plaintiff offers by his bill or petition to do, but when the plaintiff comes into a court of equity and submits his cause to and offers to abide by the decree of that court, a court of equity will seek to do complete justice and determine and adjust the equities of all the parties." (p. 465.)

Another well-established maxim of equity is "equity regards substance rather than form." The maxim pertains more exactly to equitable remedies by which equitable rights are established or given but dispenses with the pure formalities which would otherwise defeat equity. It is closely connected with another maxim that "Equity regards as done that which ought to have been done." From the opinion by Mr. Justice Brewer in the early case of *Hudson v. Gibbony*, 28 Kan. 612, the following is quoted:

"In other words . . . equity always looks beyond the mere form of a transaction, the mere paper evidences, and goes to the substantial merits and equities." (p. 616.)

In the application of the maxim "equity regards substance rather than form," equity disregards mere technicalities and technicalities in equity may be resorted to only when in no other way can the just rights of the parties be protected and preserved. It may be observed, in passing, that today the maxims of equity are such that a maxim usually may be found which is apt and adequately supports almost any and all equitable considerations and that courts of equity apply and emphasize the applicable maxims that ultimate justice requires in each case. Equity is the laboratory of the law in which the most sensitive scales of justice are used. He who seeks to have his cause submitted for delicate decision upon such scales must be prepared to rise or fall according to the greater weight of all the equities in each particular case.

Application of the foregoing general principles of equity to the present case invokes the following observations: The appellant resisted the appellee's motion to stay the writ of assistance, appellee's motion to set aside the default judgment, and appellee's petition for a new trial, all of which were predicated on the ground of mutual mistake of fact as to the part of the land which should have been covered by the mortgage. Consequently, it appears that when the appellee thereafter filed his answer it would have been futile for him to have made a tender of his undetermined proportion of the back taxes which had been paid by the appellant. Where tender would be futile it is usually unnecessary. (See *Chinn v. Bretches*, 42 Kan. 316, 22 Pac. 426; *Woodard v. Timms*, 113 Kan. 413, 215 Pac. 456; and *El Dorado Nat'l Bank v. Coca-Cola Bottling Co.*, 129 Kan. 272, 282 Pac. 579.) Also, it has been held that tender need not be made when the amount thereof is indefinite and can be determined only by litigation of the question. Transcending these considerations, however, is the general equitable principle that equity avoids injustice. In the instant case the district court found from evidence which was clear, convincing and satisfactory to such court that neither of the involved parties originally intended that the commercial or business property of the appellee should be covered by the mortgage. Therefore, for the appellee to lose such property because of a more or less technical omission in his pleading would result in a great injustice rather than in equitable solution of the entire controversy. To permit the appellant to prevail because of a mere failure in the form of the pleadings would be tantamount to a recovery predicated upon a technicality and as hereinbefore set forth equity abhors technicalities. Also it should be observed in support of such a maxim that Kansas has a statute which admonishes this court against deciding litigation upon purely technical errors and irregularities. G. S. 1935, 60-3317, reads:

"The appellate court shall disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, where it appears upon the whole record that substantial justice has been done by the judgment or order of the trial court; and in any case pending before it, the court shall render such final judgment as it deems that justice requires, or direct such judgment to be rendered by the court from which the appeal was taken, without regard to technical errors and irregularities in the proceedings of the trial court."

From the language of the statute the question arises—what final judgment does this court deem that justice requires? As herein-

before set forth it clearly appears that the appellee should pay his proper proportion of the taxes paid by the appellant upon the whole of lot 1 accruing subsequent to the year 1934. This court cannot ascertain with certainty when such taxes were paid; neither can it determine from the record whether the parties to the litigation are agreeable to having such taxes adjusted upon the basis of the division of the property for tax purposes which it was stipulated occurred some time in the year 1943. The stipulation in the record is too indefinite to warrant our indulging in any presumptions as to whether the parties agreed that the ratio established by the stipulation should apply to the taxes for all prior years. If the parties can so agree the amount which the appellant is entitled to recover from the appellee becomes simply a matter of mathematics. If they cannot so agree then the proper ratio and amount due the appellant must be determined by further proceedings in the district court.

The question of the amount of interest which should be allowed can be determined here. Reference to the record discloses that the mortgage provided that the appellant should be entitled to recover interest at the rate of six percentum per annum on any taxes which it paid under and by reason of the provisions of the mortgage. The journal entry covering the default judgment allowed the appellant interest at the rate of only five per centum per annum. The appellant has not appealed from that judgment but the judgment covered only the taxes paid by it for 1935 and the first half of 1936. Consequently, the interest rate for such taxes should remain at five percentum per annum and the interest rate upon the proportion of the taxes paid by the appellant which should have been paid by the appellee for all years subsequent to the first half of 1936 should be figured at six per centum.

In reaching our decision this court has not overlooked the force of what has been held heretofore by this court in many cases cited by the appellant and particularly what we held with reference to the necessity for offering to pay taxes, in the case of *Taylor v. Frandt,* 145 Kan. 449, 65 P. 2d 264, and in the earlier case of *Davidson v. Timmons,* 88 Kan. 553, 129 Pac. 133, as to equity requiring those who seek equity to do equity. We regard the holdings in such cases as sound but not controlling in the instant case. Neither are we departing from the general rule that it is better, and at least safer, practice in equity pleadings for the party seeking equitable relief to offer to do equity. In some circumstances the failure to do so

might be fatal to recovery. We hold only that the failure to do so was not fatal to recovery in the instant case.

The appellant also asserts that the court erred in reaching certain of its findings of fact and conclusions of law. We have reviewed the same and have considered the arguments advanced by the appellant in connection therewith and find that the contentions are without substantial merit in view of the justified findings of fact and conclusions of law reached by the trial court which are controlling in this controversy. Under G. S. 1935, 60-3317, *supra,* this court is empowered to modify a judgment of the district court or to direct its final judgment. Particularly is this true in an equity case. (See *Williamstown Baptist Church v. Henley,* 158 Kan. 324, 148 P. 2d 269, and *Prudential Ins. Co. v. Foster,* 139 Kan. 112, at 117, 30 P. 2d 104, therein cited.)

The judgment of the lower court is affirmed as herein modified, and the cause is remanded with directions to that court to conduct such further proceedings as may be necessary in conformity herewith.