(8 P.3d 33)

No. 82,260

HEATHER SHELLEY, *Appellee/Cross-Appellant*, v. STATE OF KANSAS, DEPARTMENT OF HUMAN RESOURCES and DEPARTMENT OF ADMINISTRATION, *Appellants/Cross-Appellees*.

Opinion filed July 14, 2000.

*John L. Yeary,* of Kansas Department of Human Resources, for the appellant/cross-appellee Department of Human Resources.

*Lisa J. Lewis* and *Mark S. Braun,* of Kansas Department of Administration, for the appellant/cross-appellee Department of Administration.

*Heather O. Shelley,* of Wichita, appellee/cross-appellant pro se.

Before KNUDSON, P.J., GREEN, J., and BUCHELE, S.J.

BUCHELE, S.J.: This is an appeal from the district court's reversal of a final order of the Secretary of the Kansas Department of Human Resources (KDHR) which denied payment of a longevity bonus to Heather O. Shelley. The Kansas Department of Administration (KDA) appears in support of KDHR. We affirm and remand with directions.

The facts of this case are not in dispute. The primary issue to be decided in this appeal is whether KDHR and KDA erroneously interpreted K.S.A. 75-5541. This is a question of law over which this court has unlimited review. See *Wasson v. United Dominion Industries*, 266 Kan. 1012, 1018, 974 P.2d 578 (1999).

Shelley first worked for the State of Kansas as a law clerk from June 1980, until August 12, 1980, for the Department of Social and Rehabilitation Services (SRS). On June 1, 1983, she began working for SRS as an Attorney I and held this position until July 12, 1994. On July 18, 1994, Shelley began working for KDHR as an Attorney II and continues in that position. After 10 years of service, Shelley began to receive annually the State's longevity bonus of $40 for each year of service.

The legislature amended K.S.A. 75-5541 effective December 17, 1995, to provide that an employee would become eligible to receive a longevity bonus on his or her "accrual date," the date that an employee had actually completed 120 months of service. Prior to December 17, 1995, an employee became eligible for a longevity bonus on his or her "enter-on-duty" date, which was the anniversary of the first date the employee ever worked for the State. This change was made in conjunction with the State's conversion from a monthly payroll period (KIPPS) to a biweekly payroll period (SHaRP). The change from an enter-on duty date to an accrual date for payment of the longevity bonus had no effect on employees with continuous service. The change did affect those state employees with a break in service, because it changed the date for receiving the longevity bonus payment from the date of first service with the state, to the anniversary date of the employee's 120 months of service.

Shelley accrued 120 months of service on April 6, 1993. Under the old KIPPS payroll plan, she was eligible to receive her longevity bonus as of her enter-on-duty date of June 19. Under the new SHaRP payroll plan, she became entitled to receive the longevity bonus annually on the accrual date of April 6. One reason for changing the date for payment of the longevity bonus was to benefit employees with a break in service by recognizing that employees should receive the longevity bonus nearer to their date of eligibility.

Shelley was paid a $480 longevity bonus on August 1, 1995. This amount was for her 12 years of service. Under the KIPPS payroll plan, she was eligible to receive the bonus on June 19, 1995, her enter-on-duty date. The following year under the SHaRP payroll plan, Shelly became eligible for her longevity bonus on her accrual date of April 6, 1996. KDHA denied the payment because it would result in Shelley receiving 2 bonus checks in the 1996 fiscal year, contrary to the policy of KDA. The effect of KDHR's ruling was that Shelley would not be paid another longevity bonus until April 6, 1997, the date she would be eligible for her 14-year bonus. Instead, KDHR offered Shelley $40 (the amount earned for 1 year of service) in lieu of $520 for her 13-year longevity bonus, which she refused. As a result of this decision, Shelley was denied her 13-year longevity bonus.

*Statutory History*

Since KDHR's decision that the "clear language of K.S.A. 75-5541 limits" payment of longevity bonuses to one per fiscal year was reversed by the district court, we begin our review of the history of this statute to determine which interpretation is correct.

In 1989, K.S.A. 75-5541 was enacted. It provided that employees should receive "additional compensation" which was entitled "longevity pay." K.S.A. 75-5541(a) (Ensley 1989). An employee was entitled to this additional compensation "upon completion of 120 months of satisfactory service." K.S.A. 75-5541(b).

For the purpose of determining when an employee reached the 120-month mark, part-time employment was converted to a full-time equivalent according to the "policies adopted for the administration" of the new statute. K.S.A. 75-5541(b) (Ensley 1989).

These policies were promulgated in K.A.R. 1-5-29 (1990 Supp.) and K.A.R. 1-2-46 (1987 Supp.)

The number of years of service was determined "as of the service anniversary date within such fiscal year." K.S.A. 75-5541(c) (Ensley 1989). The service anniversary date was the date "which such officer or employee began employment under the Kansas civil service act . . . adjusted . . . for any periods during which such officer or employee was engaged in part-time employment under the Kansas civil service act." K.S.A. 75-5541(d)(Ensley 1989).

The statute was to be liberally construed "to maximize benefits to those" who provided faithful service and was intended to encourage employees to remain employees of the State of Kansas. The new statute was to apply to "fiscal years commencing after June 30, 1989." K.S.A. 75-5541(f) (Ensley 1989).

This statute was amended in 1994. L. 1994, ch. 352, § 4. The words "additional compensation" were changed to "bonus" and the words "longevity pay" were changed to "longevity bonus." The "a" prior to the words "bonus" and "longevity bonus" was added for grammatical purposes. The statute still provided that an employee was eligible for the longevity bonus upon completion of 120 months of "state service." The section discussing the conversion of part-time employment to full-time employment was deleted and replaced with the sentence: "Length of service and service anniversary dates shall be determined pursuant to rules and regulations or policies adopted by the secretary of administration." L. 1994, ch. 352, § 4(b). The section defining the service anniversary date was deleted. L. 1994, ch. 352, § 4(d). The liberal construction language was also deleted and replaced with: "The purpose of longevity pay is to recognize permanent employees who have provided experience and faithful long-term service." L. 1994, ch. 352, § 4(f).

K.S.A. 75-5541 was amended again in 1995. The amendments became effective December 17, 1995. L. 1995, ch. 132, § 6. K.A.R. 1-5-29 was also amended. The only significant changes made in 1995 were to the date an employee would be paid his or her longevity bonus and the requirement that the bonus be included in the employee's regular paycheck and not paid in a separate check. L. 1995, ch. 132, § 6(d).

*Fiscal Year*

The 1989 version of the statute required payment of $40 for each full year of service "rendered by such officer or employee as of the service anniversary date *within such fiscal year.*" (Emphasis added.) K.S.A. 75-5541(c)(Ensley 1989). In its answer to Shelley's claim, KDA argues that prior to the "implementation of SHaRP, the [fiscal year] for payroll purposes, [was] June 18th of one year to June 17th of the next year." Reference to the payroll period as a fiscal year is incorrect. The terms "payroll period" and "fiscal year" are not interchangeable. K.S.A. 75-3002 requires: "The fiscal year in this state shall commence on the first day of July in each year, and close on the thirtieth day of June next succeeding." K.S.A. 75-5541 (Ensley 1989) required the new statute to apply to "fiscal years commencing *after June 30, 1989.*" (Emphasis added.) L. 1989, ch. 260, § 3(f). Clearly, the legislature intended that the longevity bonus schedule follow the fiscal year calendar as outlined in K.S.A. 75-3002. The payroll period is established separately from the fiscal year and does not necessarily run concurrent with the fiscal year. The State of Kansas has but 1 fiscal year which commences on the 1st day of July in each year and closes on the 30th day of June the following year.

Although K.S.A. 75-5515 authorizes the Secretary of Administration to set the payroll beginning and ending dates and payment dates, it does not grant the Secretary authority to create a different fiscal year. K.S.A. 75-5541 provides that the Secretary may adopt regulations implementing the statute, but neither statute authorizes the State to deny a longevity bonus to an employee who is eligible to receive a bonus.

Shelley earned a 13-year longevity bonus as of April 6, 1996, during fiscal year 1996. She is entitled to receive it notwithstanding the fact that she was not paid her 12-year longevity bonus (earned as of June 19, 1995) until August 1995, which happens to fall within fiscal year 1996. There is no support that the legislature intended to deny certain employees a longevity bonus when the SHaRP system was implemented. Ergo, the legislative change to pay employees their longevity bonuses on their accrual date had the effect of accelerating the payment date for many employees.

*Statutory Construction.*

Since its inception in 1989, the longevity bonus was intended to create good will and loyalty among employees who have provided service to the state for a substantial number of years. The statutory language of K.S.A. 75-5541 that "each classified employee . . . shall be eligible to receive a longevity bonus . . . upon completion of 120 months of state service," clearly indicates employees are to be paid a yearly bonus. Because of the unique situation created by the implementation of the SHaRP system, the statute has become ambiguous and it is necessary to reconcile and harmonize the concept of one payment per fiscal year with the requirement that employees must receive an annual bonus. See *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997).

Such reconciliation requires examination of each section of the statute. The statute begins with "[e]ach classified employee . . . shall receive a bonus." K.S.A. 75-5541(a). The employee becomes eligible for the bonus "upon completion of 120 months of state service." K.S.A. 75-5541(b). "The amount of each longevity bonus payment shall be computed by multiplying $40 by the number of full years of state service, not to exceed 25 years, rendered by such officer or employee *as of the service anniversary date within such fiscal year.*" (Emphasis added.) K.S.A. 75-5541(c). Finally, the bonus is subject to deductions "notwithstanding the fact that payments are made annually." K.S.A. 75-5541(e). By this language, the legislature clearly intended a yearly payment.

The KDA is responsible for ensuring implementation of the statute; however, to follow its interpretation of this statute under the facts presented here is contrary to the statute and common sense. The KDA, while correct in stating that Shelley received "one bonus every fiscal year," ignores the fact that Shelley was eligible for a bonus, pursuant to statute, when she completed her 13th year of service. When an employee is eligible, the employee "shall" be paid a bonus on their regular pay warrant. Shelley should have received a check for $520 on April 19, 1996, her next regular payday following her accrual date.

A well-established legal maxim is "equity regards substance rather than form." This maxim pertains to equitable remedies "by which equitable rights are established or given but dispenses with the pure formalities which would otherwise defeat equity." *Home Owners' Loan Corp. v. Oakson*, 161 Kan. 755, 766, 173 P.2d 257 (1946).

While statutory interpretation is not a "mere technicality," the KDA is using a technical interpretation of the statute to infringe upon the clearly defined rights of a state employee to a longevity bonus. The KDA's denial that Shelley "accrued" another year of service in 1996 flies in the face of both the statute and logic. It is implausible that in 1995 Shelley had served 12 years and in 1997, she had served 14 years, but in 1996, she did not "accrue" her 13th year of service. Further, the KDA argues that it is barred by statute from making more than one longevity bonus per fiscal year, yet they offered Shelly $40 for the 13th year. This inconsistent position further illuminates that whether Shelly should be paid her 13-year longevity bonus is a dilemma of the KDA's own making.

Additionally, KDA's characterization that K.A.R. 1-5-29 "simply provides that 'upon completion of 10 years of length of service,' employees *may* be eligible for longevity bonus pay," is totally incorrect. (Emphasis added.) K.A.R. 1996 Supp. 1-5-29 provides: "Upon completion of 10 years of length of service, each classified employee, excluding any temporary employee, *shall* be eligible for longevity bonus pay." (Emphasis added.)

*Eligibility Date*

KDA claims that under the 1995 amendments to K.A.R. 1-5-29 and K.S.A. 75-5541, employees were now "*eligible* for longevity bonus payments on their 'accrual' date, *i.e.*, the date they first accrued 10 or more years of service." (Emphasis added.) KDA claims the 1995 amendments to K.S.A. 75-5541 required new procedures for "conversion from using the 'enter on duty' date to the 'accrual' date for purposes of eligibility for longevity bonuses." This is only partially correct.

Since 1989, the statute has mandated that "upon completion of 120 months of state service," an employee is eligible for a longevity

bonus. The change in 1995 from an "enter on duty date" to an "accrual" date had no effect on an employee's eligibility for longevity pay on the date they complete 120 months of service. The 1995 change related to the payroll period, e.g., when the employee actually would receive the pay. The 1995 amendment requires payment to be made in the employee's regular paycheck "upon completion of 120 months of state service" instead of on their "service anniversary date." L. 1995, ch. 132, § 6(b) and (d). None of these changes affect the right of an employee to receive a longevity bonus annually after 120 months of service.

KDA's characterization that the employee's eligibility date shifted on December 17, 1995, is a totally incorrect assertion. Eligibility for a longevity bonus has always been tied to the date the employee reaches 120 months of service. The only variable is the payroll period in which the employee will be paid. The KDA's assertion that the eligibility date shifted, combined with its incorrect use of the term "fiscal year," resulted in an outcome that was both arbitrary and contrary to law. The district court was correct in reversing the KDHR decision denying Shelley's longevity pay.

*Attorney Fees*

Shelley argues that she is entitled to attorney fees under K.S.A. 1996 Supp. 44-324. We disagree.

K.S.A. 44-313(a) defines an employer as "the state of Kansas or any department, agency or authority of the state, . . . employing any person." K.S.A. 44-313(b) defines an employee as "any person allowed or permitted to work by an employer." Finally, K.S.A. 44-313(c) defines wages as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or *other basis* less authorized withholding and deductions." (Emphasis added.)

K.A.R. 49-20-1(d) (1997) provides:

" 'Or other basis,' within the meaning of K.S.A. 44-313(c), shall include all agreed compensation for services for which the conditions required for entitlement, eligibility, accrual or earning have been met by the employee. Such compensation may include, but is not limited to, profit sharing, fringe benefits, or compensation due as a result of services performed under an employment contract that has a wage rate required or implied by state of federal law. Conditions subsequent to

such entitlement, eligibility, accrual or earning resulting in a forfeiture or loss of such earned wage shall be ineffective and unenforceable."

Shelley is an employee of an agency of the State of Kansas and has met the necessary requirements to become eligible for a longevity bonus. Once funds were appropriated by the legislature to pay the longevity bonus, it becomes an entitlement and is compensation for an employee's faithful service to the State of Kansas. See *Schmitt v. State of Kan.*, 844 F.Supp. 1449, 1453 (D. Kan. 1994). Based on the definition under K.A.R. 49-20-1(d), the longevity bonus is a wage. See K.S.A. 1999 Supp. 44-324(c).

Shelly did not file her claim pursuant to the Wage Payment Act. K.S.A. 1999 Supp. 44-324(c). Although this statute provides for assessment of reasonable attorney fees against an employer, when the Secretary of Human Resources prevails on behalf of an employee, the statute further provides that the amount recovered is to be placed into the wage claims fee fund. The statute makes no provision for attorney fees for a private cause of action and, therefore, does not provide for recovery of attorney fees by Shelley in this case.

Finally, Shelley claims that pursuant to K.S.A. 44-315(b), she is entitled to a penalty payment because of the KDA's interpretation of the statute which resulted in the withholding of a bonus check. K.S.A. 44-315(b) is restricted to employees who have been terminated or have separated from their employer. This statute is inapplicable to Shelley as she is still employed by the State.

The district court awarded interest on its judgment beginning with August 1, 1996. The record does not reflect how or why this date was selected. It is undisputed that Shelley was entitled to her longevity bonus on April 6, 1996, and that it was payable on her next payday, April 19, 1996. The judgment of the district court is affirmed and modified to provide that interest shall run from April 19, 1996, until paid.

Affirmed as modified.